## Given *versus* Kelly *et al.*

1. One joint owner of a chattel may maintain trover against his fellow if the latter so dismantle or dispose of the property as to render it unfit for the use for which it was designed.

2. Defendant was joint owner of an oil-well and the machinery used in working the same. He sold part of the tubing, caused another part of the machinery to be removed and applied to his own use, and sold the boiler for old iron. *Held*, that this misuser of the property practically worked its destruction, and the other joint owners could maintain trover against defendant therefor.

October 22d 1877. Before MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. AGNEW, C. J., and SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Armstrong county*: Of October and November Term, 1877, No. 86.

Trover, by John J. Kelly and others, against George Given, to recover from defendant one-fourth of the value of a boiler, engine and the machinery of an oil-well.

Defendant pleaded the general issue.

In 1870 a company was formed to put down an oil-well, the stock in which was limited to sixteen shares, of which at the time of this suit the plaintiffs owned four shares, and the defendant the remainder. The well did not prove a success, and the defendant, who had been in possession and control of the well for about a year, in 1873 abandoned it and removed part of the machinery to another oil-well which he owned, and sold the rest of the machinery and gear of the well for "junk."

At the trial plaintiffs submitted the following point:—

2. That if the jury find from the evidence that plaintiffs were the owners of the one-fourth of the property in dispute, and the defendant three-fourths of the same, and the said defendant dismantled the well and detached the machinery, using a part at other

[Given *v.* Kelly.]

wells, selling part for junk and destroying a part, in that event he is guilty of conversion, and the plaintiffs are entitled to recover the value of their shares or interests with interest, from the date of conversion.

The answer of the court, Boggs, P. J., was in the affirmative, as explained in the general charge.

Defendant submitted the following points, to which are appended the answers of the court:—

2. That if the jury believe the evidence that the plaintiffs and the defendant, George Given, owned together, though in unequal proportions, the property in controversy at the time of its removal, then they are tenants in common in the property, and this action cannot be sustained, and their verdict must be for the defendant.

Ans. "Affirmed as the general rule, but qualified as explained in the general charge."

3. That if they find from the evidence, that the plaintiffs and the defendant were tenants in common, or owned the property jointly at the time of its removal, then there cannot be a recovery, unless they should find from the evidence that there was a complete destruction of the property in controversy caused by the defendant.

Ans. "Affirmed as qualified and explained in general charge."

4. That the mere taking apart of the several pieces of the machinery, casing, tubing, &c., does not cause destruction, nor does the removal of the property from the well, nor from one place to another; but destruction would consist in this case in rendering the property wholly unfit for the use and purpose for which it was made.

Ans. "The first clause of this point is affirmed, as explained in general charge; the last is answered in the negative as to the purpose thereof, as explained in the general charge."

The court in the general charge said:—

"If you find from the evidence these allegations on the part of the plaintiffs to be true, I instruct you they are entitled to recover in the present action the one-fourth of the value thereof. The defendant, by his counsel, contends that the action cannot be maintained in the form in which this suit was brought, and that raises a question of law for the court. By a careful examination of authorities, it seems that the sale by one of several joint owners of a chattel, denial of the rights of the other co-tenants, and exclusive use by the one having the chattel still in existence, have never been held sufficient to enable the excluded owner to maintain either trover or trespass. The principle on which a tenant in common cannot sue his co-tenant in trover or trespass is that he has another remedy, his right to take and use the chattel at all times when not actually occupied by the other, but this right ceases, and consequently a right of action accrues when the chattel is destroyed and trover or trespass lies. What constitutes destruction is an important legal question in this cause. The evidence tends to show that

[Given *v.* Kelly.]

the defendant, by his employees, drew out of the well the sucker-rods and tubing, and the greater part of the casing, part of it having become detached and remained in the well, and to show that he sold and otherwise disposed of those things, together with the boiler and engine, and nearly everything belonging to the well, against the wishes and protest of the plaintiffs, and that he sold the boiler for old junk, and if you find these facts to be true, from the evidence, I instruct you, if you find also the allegations of the plaintiff to be true, that they were joint owners, as already explained of the chattel, it was equivalent to destruction of the property.

"It is contended by the learned counsel of the plaintiffs, that selling the boiler for old junk, to be smelted in a furnace, was destruction of the engine and machinery, and everything belonging to the well; and here, I remark, the engine would cease to perform the work for which it was designed by the owners of the well, and for which it was used; it could not operate without steam, and steam could not be raised without the boiler, and so you observe, for want of the boiler the engine and whole machinery and pumping apparatus inevitably stood still, and such I hold is destructive of the chattel. It is destruction for one tenant in common or joint tenant to take the exclusive possession of the chattel and appropriate it to a purpose not designed by the owners, against the protest of his co-tenants, denying to them the use of it and entirely refusing to apply it to the purposes for which it was held by both. This doctrine is taken from the language of Justice LEWIS, in Agnew *v.* Johnson, 5 Harris 378: 'When one misuses the joint property by appropriating the joint property to uses for which it was not designed, and refuses to apply it to the purpose for which it was held by both, in such case trover can be maintained.' I remark, that in case the one joint owner destroys such portion of the chattel as renders it useless and unfit for the purpose designed, it is equivalent to destruction of the chattel, and the design cannot be determined, as contended for by the learned counsel for the defendant. He contends it is the design of the working of the chattel that must govern in such case; that destruction consists in rendering the property wholly unfit for the purpose it was made. While the learned counsel of the plaintiffs contends it is the design of the purchasers and owners which rules the question. The latter position is clearly right; the maker of an engine or boiler designs it either for his own use or for sale, while the purchaser designs it for his own use in the line of his business, and if one joint tenant thus destroys the chattel by rendering it useless for the purpose designed by the owners, and used by them, such is equivalent to destruction of the property in point of law. You will first take up the theory of the plaintiffs, and determine from the evidence how the issue formed by the allegations of the plain-

[Given *v.* Kelly.]

tiffs, on the one hand, and the allegations of the defendant on the other hand is. If you find the theory of the plaintiffs to be true, they are entitled to recover the value of one-fourth of the chattel so destroyed, with interest from the time of the destruction."

The verdict was for plaintiffs, and after judgment the defendant took this writ, the assignments of error being the foregoing answers to points, and the portion of the charge quoted.

*David Barclay*, for plaintiff in error.—Neither trover nor trespass can be maintained by one joint tenant against another for any injury to a chattel which falls short of its destruction: Trout *v.* Kennedy, 11 Wright 387; Walworth *v.* Abel, 2 P. F. Smith 374.

*Golden & Patton, J. V. Painter* and *G. S. Crosby*, for defendants in error.—If it be true that an action of trover or trespass is denied to one joint owner as against another, upon the principle that each is equally entitled to the possession as long as they do not destroy the property, but keep the specific property in possession, the reason cannot apply when one joint owner destroys the joint possession by an actual destruction of the thing itself: White *v.* Osborn, 21 Wend. 72; Fennings *v.* Grenville, 1 Taunt. 245; Lowe *v.* Miller, 3 Gratt. 205; Agnew *v.* Johnson, 5 Harris 378.

Mr. Justice Mercur delivered the opinion of the court, October 29th 1877.

The right of a party to maintain trover depends on his ability to establish his right of possession against the defendant in the action. Where the defendant is a joint owner with him of a chattel, the right of each to the possession is equal, and therefore for the mere detention by one joint owner the action cannot be sustained. Nor can it be sustained against the vendor for a mere sale of a chattel in which he was a joint owner, for such a sale passes to the vendee the individual interest only of the vendor. This rule, however, should be restricted to cases in which the property remains *in specie*. Hence, where a hogshead of rum was held in joint ownership, and one of the owners had sold it, presumptively at retail, he was held liable to his co-tenant in trover. This was because he had practically made the liquor irrecoverable. It was substantially a destruction of the property: Wilson *v.* Gibbs, 3 Johns. 175. Where a joint owner destroys a chattel, trover will undoubtedly lie against him by his co-tenant. The question arises, what constitutes destruction in law? The sale of the rum in the manner stated was held to be one form of destruction. That, however, is not the only mode of destroying a joint owner's portion of the property. It was said in Agnew *v.* Johnson, 5 Harris 373, where one *misuses* the joint property by appropriating it to uses for which it was not designed, and refuses to apply it to the purposes

[Given *v.* Kelly.]

for which it was held by both, trover may be maintained.    In the case now under consideration, the learned judge denied the right of the defendant in error to recover, unless a destruction of the property was proved.    He charged substantially, that rendering the property wholly unfit for the use and purpose for which it was made, was destruction.    In this he committed no error, if the evidence was sufficient to justify the submission of the fact to the jury. We think it was sufficient.

The parties had been jointly interested in an oil-well in Armstrong county, and were joint owners of all the machinery used in working the same.    The machinery consisted in part of boiler, engine, pump, pipe, casing, tubing, ropes, belting, sucker-rods, swivels, elevator, tanks, &c.

The evidence tended to show that the plaintiff in error tore up and removed from the well all the machinery.    He sold part of the tubing, and caused the remainder of the machinery to be taken to Butler county, and applied the same to his own private use. Subsequently he sold the boiler as old iron.    If he thus stripped the well of all its working power, removed dismembered portions of the machinery into an adjoining county, and appropriated portions of it to other purposes than those for which it had been designed and used by the joint owners, and caused the identity of other portions to be destroyed, it was manifestly such a misuser of the property as practically to work a destruction of the interest of the defendant in error.                          Judgment affirmed.