## Johnson's Administrator *v.* Whiteside et al., Appellants.

*Replevin—Evidence—Binding instructions—Installment lease—Effect—Case for jury.*

In an action of replevin to recover possession of a piano, where the plaintiff claimed as husband and administrator of the estate of his wife who had purchased the piano on an installment lease, and the defendant, her brother, claimed as a joint purchaser with her, the lease in the woman's name, giving her the right of possession for thirty-two and a half months, with an option to purchase thereafter, was not such proof of her sole ownership as to entitle the plaintiff to binding instructions in the face of testimony supporting the claim of the defendant.

Argued April 29, 1922. Appeal, No. 21, April T., 1922, by Clarence A. Whiteside, intervening defendant, from judgment of C. P. Allegheny County, April T., 1920, No. 655, on verdict for plaintiff, in the case of James A.

Johnston, Administrator of the Estate of Anna Mary Johnston, deceased, v. A. K. Whiteside, defendant, and Clarence A. Whiteside, intervening defendant.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Reversed.

Replevin to recover possession of a piano.   Before SWEARINGEN, J.

The facts are stated in the opinion of the Superior Court.

The court directed a verdict in favor of the plaintiff in the sum of $200, the agreed value of the piano, and subsequently entered judgment on the verdict.   Clarence A. Whiteside, intervening defendant, appealed.

*Error assigned,* inter alia, was the action of the court in affirming plaintiff's point for binding instructions.

*Sidney J. Watts,* for appellant.—Plaintiff's own case incomplete without oral testimony, and required submission to a jury: Brown v. Judge, 77 Pa. Superior Ct. 106; Barsky v. Lutz & Schramm Co., 74 Pa. Superior Ct. 449.

Defendant's evidence raised a relevant and vital issue of fact: Bohlen v. Arthurs, 115 U. S. 482.

*Joseph R. Conrad,* of *Conrad & Fla Havhan,* for appellee.

OPINION BY LINN, J., July 13, 1922:

Plaintiff as administrator brought replevin for a piano, alleging title and right of possession in him as administrator of his wife's estate.   She died in November, 1918.   He testified "I moved the piano to 5464 Kinkaid street, after my wife died, with the rest of my furniture, to go back with my folks, and I stayed there six months."   The Kinkaid Street address was the residence of his wife's father, A. K. Whiteside, who was made de-

fendant. Decedent's brother, Clarence A. Whiteside, intervened as defendant, filed a counterbond, and retained possession of the piano.

In his declaration plaintiff alleged: in 1902 decedent's wife, then unmarried, obtained the piano by "a lease or installment agreement"; in 1905 she obtained a bill of sale therefor; years afterward he and decedent were married, and at her death the piano was in her possession. He alleged he then moved it to the residence of decedent's father, defendant, who when plaintiff subsequently desired to remove it, declined to permit him to do so.

The intervening defendant filed an affidavit of defense denying that his sister obtained a bill of sale of the piano and averred that he and "his sister together jointly purchased said piano for the use, benefit and enjoyment of the entire family, and affiant paid out of his own money one-half of the purchase price thereof." His alleged joint interest was set up as justification for retaining possession.

On the issues so made, the parties went to trial. The court instructed the jury to find for the plaintiff for $200, the agreed value of the piano. Judgment was entered on the verdict and the intervening defendant has appealed, alleging error in giving binding instructions for plaintiff.

Plaintiff offered in evidence a lease of the piano by S. Hamilton to Miss A. M. Whiteside dated December 23, 1902, for the term of thirty-two and a half months. In it she was granted an option to purchase the piano for $350. No bill of sale or other direct evidence that she bought the piano was offered. A witness produced the lease from the files of Hamilton and Co. and testified that he found it in its proper place among the papers of that company and that it was "a closed lease"—a term not explained in the record. Plaintiff's evidence was that he and decedent were married in 1914 and then went to reside with his wife's parents, the Whitesides, at 7121

Race Street, where all lived as one household for eighteen months. From there they all moved to the Alma Apartments. From there plaintiff and his wife left her parents and took the piano with them to their own home. After decedent's death, as appears above, he took the piano back to her parents and left it, while he went "back with my folks." It does not appear why or upon what terms he relinquished possession or control of it then.

A. K. Whiteside, decedent's father, filed a disclaimer and testified that in 1902 his children, Clarence (appellant), and Anna (decedent), were "in the neighborhood of 16 and 18 years of age"; and, being asked to state the circumstances in which the piano was bought, related that he had sustained financial reverses, and desiring a piano, said "as I couldn't furnish the money to buy a piano, and I knew her talent was good, and she had a desire for that, we arranged in the family if by taking out of every salary so much every month, we could easily raise it, so they went to Mr. Hamilton, a friend of ours, and stated the case and told him—

"Mr. Conrad: Objected to, unless he has personal knowledge of this, and not hearsay.

"Mr. Watts: Q. Well, the piano was bought, and placed in the home, was it? A. Yes, sir, in December, 1902."

He also testified that when the daughter and her husband removed from his home, his daughter said "I don't want to take that piano, because I didn't pay for it, Clarence paid for it, and I don't want to take it out there"; the witness continued "But we insisted,—mother and I insisted she would take it because we knew it would be a great comfort to her, because she was going out—." A witness, who worked with decedent in 1902, and then knew about the acquisition of this piano, testified "I had always heard Miss Whiteside say that Clarence and she had bought the piano together"; she had frequently heard that stated by decedent. Another witness testified that decedent had said that she and her brother

"bought it together" and that "she didn't like to take it, because it didn't belong to her,—that is, it didn't all belong to her."

After plaintiff relinquished possession or control of the piano to defendant, A. K. Whiteside, in November, 1918, he made no further claim to it until May, 1919, when his right to take it was denied. After that he obtained letters of administration on the estate of his wife, and brought this action in June, 1920.

There is no documentary evidence that decedent bought the piano; if she did, the fact must be found from oral evidence; we have referred to what there is. The lease is here; but of course it does not show the lessee became owner. When A. K. Whiteside was relating how the piano was acquired, he was interrupted by counsel for appellee, as has appeared, and in reply to the question "Well the piano was bought and placed in the home, was it?" answered "Yes, sir, in December, 1902." Was it bought by one or more? By which one? If by more, was it "placed in the home" by the purchasers as joint or common owners, or subject to what conditions? What inference, if any, can be made from the fact that from 1902 to 1914 the piano was in the Whiteside home? How, if at all, is it affected by the fact that plaintiff married Miss Whiteside in 1914 and lived in the same household until 1916? What is the effect of the evidence that in 1916 when the households separated, plaintiff and his wife took the piano with them? Concerning the removal, there is evidence of what she and her parents said to each other at the time; there is also evidence of what she said to others on the same subject. Mere taking possession or control in 1916 was not conclusive of her ownership in the circumstances shown; for, if the piano was owned jointly, or in common, her possession or control would not deprive her brother of his interest, the possession of one joint or common owner being the possession of all: Given v. Kelly, 85 Pa. 309; Heller v. Hufsmith, 102 Pa. 533. It therefore seems clear that whether decedent was

the sole owner of the piano, or alone entitled to its possession, as plaintiff claimed, depended in part on oral evidence to be submitted to the jury: Brown v. Judge, 77 Pa. Superior Ct. 106; Northern Trust Company, Executor, v. Huber, 274 Pa. 329. Accordingly we must sustain the first assignment of error complaining that plaintiff's point for binding instructions was affirmed.

As a new trial must be granted, we should perhaps say we differ from some of the conclusions suggested in the opinion refusing a new trial. The court appears to attribute no force to the oral evidence offered by appellant to show he was a joint or common owner of the piano, and states as a reason therefor that appellant "was attempting to vary, alter and contradict the writing by oral testimony. This he had not laid the ground to do. He had neither pleaded nor did he attempt to show that there was any fraud, accident or mistake made at the time the contract was executed between S. Hamilton and Miss A. K. Whiteside." We do not so consider it. The writing specified was the lease of 1902. Appellant was not a party to the writing; his purpose was to show that as between him and the lessee he had an interest in the piano; that interest did not arise out of the lease or depend upon anything in it. The rule excluding extrinsic evidence to vary a writing has no application.

There was sufficient evidence, if believed, to show that appellant was a joint or common owner, and unless plaintiff's intestate was the sole owner, and therefore alone entitled to possession or control of the piano, defendant, if a joint or common owner, was entitled to retain possession against plaintiff: Reinheimer v. Hemingway, 35 Pa. 432, 438; Given v. Kelly, supra; Heller v. Hufsmith, supra.

We must dismiss the fourth assignment alleging error in the refusal to permit intervening defendant to answer the following question: "Did you pay the S. Hamilton Company any part of the payments shown on the back of the lease which has been identified as Exhibit No. 1?"

a question "Objected to as immaterial." We are unable to pass upon it because we are without the necessary facts to consider the assignment intelligently, as the printed record before us does not show any such payments, and the original record which we have examined does not contain the lease, merely a statement that it was offered.

The first assignment of error is sustained; the judgment is reversed and a new trial is granted.