## Strong, Deemer & Co., Limited, Appellants, *v.* F. C. Dinniny and H. A. Kent.

*Contract—Executory contract—Delivery of timber at future time.*

A contract by an owner of timber to cut it and deliver it to the vendee in a stream at a future time, payments to be made in certain specified portions as the work progressed, is an executory contract, and the vendee is not entitled to the possession of the timber until it is actually delivered into the stream as provided by the contract; and the stamping of the logs upon the banks or upon skids with the vendee's mark does not pass title to the vendee.

*Replevin—Right of property—Right of possession.*

Replevin cannot be maintained without showing a general or special property in the plaintiff, together with the right of possession.

Argued May 7, 1896. Appeal, No. 348, Jan. T., 1896, by plaintiffs, from judgment of C. P. Potter Co., Sept. T., 1893, No. 242, on case tried before the court without a jury. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Replevin to recover 1,300,000 feet of hemlock saw-logs.

The case was tried before OLMSTED, P. J., without a jury.

The opinion of the court was as follows:

### FINDINGS OF FACT.

1. I find as a fact in the case that on the 12th day of September, A. D. 1892, a contract was entered into in writing between H. A. Kent (one of the defendants), of the first part and Strong, Deemer & Co. (plaintiffs) of the second part, by the terms of which the party of the first part agreed to sell to the party of the second part about 3,500,000 feet of merchantable hemlock saw logs to be cut from timber that Kent had purchased of the Westfield Tanning Company. The logs to be banked securely on the bank of the creek during the winter and put afloat in the spring of 1893, in time for the first drive; the said Strong, Deemer & Co. agreeing to pay the said Kent at the rate of $4.65 per thousand feet, board measure, for all said logs so stocked and delivered.

2. I find as a matter of fact that the payments were to be made as follows : The party of the second part to advance from time to time as the logs were being cut and skidded and stocked on the bank the sum of $1.50 per M. when the logs were cut and skidded and $1.50 per M. when the logs were hauled and put on the landing, and the balance, $1.65 per M., was to be settled for by Strong, Deemer & Co., by giving the said Kent their note for four months, when all the logs were put afloat as per contract.

3. I find as a matter of fact that on the 16th day of September, A. D. 1892, Strong, Deemer & Co. gave to Kent to apply on the above contract their two notes of $1,000 each, payable four months after date at the bank of Cochran, Payne & McCormick at Williamsport, Pa.

4. I find as a matter of fact that these notes were paid at maturity and that no other payments were made upon the contract.

5. I find further, as a matter of fact, that on the 1st day of December, A. D. 1892, the above described contract was assigned by Kent to F. C. Dinniny, one of the defendants, and that on the 23d day of December, 1892, an agreement was entered into between F. C. Dinniny and Strong, Deemer & Co., to which a copy of the contract of September 12, 1892, was attached and the assignment by Kent to Dinniny was agreed to, and the said Dinniny agreed with Strong, Deemer & Co. to carry out the contract of September 12, 1892, with the modification that where the original contract provided for the delivery of 3,500,000 feet of logs the contract should be for whatever timber there was upon the land described in the contract of September 12, 1892, supposed then to be less than 3,500,000.

In this supplemental contract F. C. Dinniny admitted the payment of $2,000, as described above. Said contract of December 28, 1892, was signed by Strong, Deemer & Co. and F. C. Dinniny.

6. I find as a matter of fact that F. C. Dinniny, or those working under him, cut, skidded and placed upon the bank of the stream during the winter of 1892–3 about 1,400,000 feet of logs, which logs were scaled and marked as required by the contract, but did not put them afloat by breaking the landing and rolling them into the stream.

7. I find as a matter of fact that the parties disagreed as to the time of the payments to be made by Strong, Deemer & Co. and that the defendants refused to allow the plaintiffs to take possession of the logs, Dinniny claiming that the logs were yet his and in his possession, and the plaintiffs, claiming and demanding possession, sent their employees some time in the spring of 1893 to put the logs into the stream for floating to Williamsport, and that they were prevented from rolling them in by force and threats from Kent, one of the defendants.

8. I find as a matter of fact that the plaintiffs on the 18th day of August, 1893, issued their writ of replevin in this case and that the logs were replevied by the sheriff, and possession of the same delivered to the plaintiffs' agent, W. F. Hamilton, on the 28th day of the same month.

9. I find as a matter of fact that all the merchantable hemlock timber upon the land described in the contract was not cut and placed upon the bank of the stream by the defendants.

10. I do not find as a matter of fact, notwithstanding the construction of the parties during the winter of 1892–3, that there is any ambiguity in the contract of September 12, 1892, that affects in any way the determination of the case as it now stands.

11. I find as a matter of fact that whatever the construction of the contract should be in reference to advances during the cutting and skidding of the logs, when cut and skidded the defendants could demand the sum of $1.50 per M. and could demand $1.50 per M. when drawn from the skids and placed upon the bank, but the defendants could not legally demand the sum of $1.65 per M. until they had rolled the logs into the stream and put them afloat.

12. I find that by the terms of the contract when the logs were placed upon the bank there was due the defendants from the plaintiffs about the sum of $2,200 over and above a credit of $2,000 paid in notes provided for in the contract.

### FINDINGS OF LAW.

1. I find that the contract of September 12, 1892, and its supplements of December 28, 1892, were executory contracts.

2. I find as a matter of law and of fact that the logs on the day they were replevied by the plaintiffs from the defendants were yet in the legal possession of the defendants.

3. I find as a matter of law that at the time of the issuing of the replevin the plaintiffs had no right to seize the possession of the logs or by force or otherwise to take them into their possession without the consent of the defendants.

4. I find as a matter of law that the plaintiffs by having the logs measured and marked with their mark during the winter of 1892–3, while yet in the woods upon the skids or on the landing, did not oust the possession of the defendants, nor, under the terms of the contract, reduce them to their possession and control.

5. I find as a matter of law that, while at the time of the issuing of the writ of replevin, the plaintiffs may have had a qualified property in the logs, that, as they were not entitled to the possession, this action of replevin cannot be sustained, and that judgment should be entered pro retorno habendo in favor of the defendants.

### ARGUMENT.

That the contract in this case was executory is too evident for argument. The case of Pritchett and Another v. Jones, 4 Rawle, 259, is strikingly like the one under consideration and the opinion of Judge GIBSON in the case settled the distinction between an executory and an executed contract. Its correctness has not been shaken or questioned. I quote from the opinion : " The distinction between a sale which transfers the ownership and an agreement to sell and deliver at a day certain, which gives but an action for the breach of it, is a broad one distinctly understood and practically observed in the current transactions of business. . . . Every agreement for a subsequent delivery is essentially executory. . . . The parties dealt expressly with reference to the price which the leather would fetch when fit for the market; and having treated in reference to a future condition of the article, a future price and a future delivery, the contract was necessarily executory as every sale of an unfinished article must be when not sold and delivered as such. Unquestionably, the property is an article made to order, passes but by the delivery of it, because, at the time of the order, which is the date of the contract, there was no property in anything to pass ; and it will scarcely be pretended that the accidental existence of a part of the work at the time, would give the customer a specific right to the whole."

See also Anderson's Law Dictionary, page 248 ; Anderson v. Reed, 106 N. Y. 333 ; Winslow v. Leonard, 24 Pa. 14 ; Story on Contracts, 53–55 ; 2 Blackstone's Commentaries, 443. At the date of the contract the timber was in the woods, the contract provided just what was to be done by Kent, step by step; first, it was to be cut and skidded, and for cutting and skidding $1.50 per M. was to be paid; then the logs were to be "banked securely from any floods on the bank of the creek during the winter," when $1.50 per M. was to be paid. Then they were to be "put afloat (by Kent) in the spring in time for the first spring drives," and when all the logs were put afloat the plaintiffs were to give Kent their note at 4 months for $1.65 per M., making the sum of $4.65 per M. the whole contract price.

By what possible construction of this contract can we come to the conclusion that the parties to it contemplated that the plaintiffs had the right to the possession of the logs until they were rolled into the stream by Kent for transportation by plaintiffs to Williamsport, where plaintiffs' mills were located? Kent had the right under the contract to demand and receive a sum amounting in the aggregate to $3.00 per M. when he had the logs placed upon the bank, and simultaneous with his rolling them into the stream to demand the plaintiffs' note at four months for the balance then due. I can see nothing in the course of dealing between the parties or in their conduct in relation to the whole transaction that indicated that the contract received any other construction than the construction logically to be drawn from its plain letter.

I find no decided case that justifies a vendee under an executory contract in seizing the property (in the absence of any fraud) at any stage of the process of manufacture when it may please him to do so. If the plaintiffs could seize the logs when on the bank and oust the defendants of their possession, why could they not have seized them when on the skidds in the woods or at any time when it pleased them to do so? Such a construction would place the vendor entirely at the mercy of the vendee. The vendee might discover that the timber and the placing it upon the skidds were worth much more than the $1.50 per M., which he agreed to pay at the time, and the banking and putting afloat were worth much less than he had agreed to pay, and so end the contract on the skidds by taking pos-

session of the logs at that stage, and turn the vendor over to a possible remedy by an action for damages, which might be fruitless.

It is contended with much ability by the learned counsel for the plaintiffs that the scaling and marking of the logs in controversy in the winter and spring of 1893 passed the possession or the right to the possession immediately to the plaintiffs. We cannot concur with the counsel in this construction. The contract is silent as to where or when the logs are to be scaled.

It provided that they are "to be well stamped at both ends with a stamping hammer to be furnished by the party of the second part (D. M. R.) and in conclusion of this contract it is agreed that the party of the second part are to furnish a competent scaler to scale the logs and to pay him for his services and the party of the first part are to board him while scaling the same." The custom of lumbermen is to scale the logs either upon the skiddways or on the bank and to place upon the logs a mark that is registered by the boom company at Williamsport. The measuring and marking must be done before the logs are placed in the stream as it cannot be done afterwards, and an unmarked log in a floating stream is a lost log. In view of these facts, why are we to conclude that the possession of logs becomes vested in the owner of the mark as soon as applied? The plaintiffs are lumbermen at Williamsport, where the logs were to be taken out of the stream for sawing. Their mark is their means of identifying their logs at that point. It was expected, of course, when the logs were stamped that they would subsequently be delivered to the plaintiffs in the stream as the contract required, but, if for any reason they were not, as between the vendor and vendee, the vendee acquires no new or additional interest in the property not given him by his contract. The evidence seems to show that the first scaling and marking commenced in December, 1892, and ended in March, 1893. It was undoubtedly done from time to time during the winter as the cutting and skidding and banking progressed.

Replevin cannot be maintained without showing either a general or special property in the plaintiff together with the right of immediate possession: R. R. Company v. Ellsey, 85 Pa. 283.

The plea of property imposes upon the plaintiff the necessity

of establishing his title and the right of exclusive possession. Mathies v. Sellers, 86 Pa. 486.

The distinction between a sale which transfers the ownership and an agreement to sell and deliver at a day certain, which gives but an action for the breach of it, is a broad one. Every agreement for a subsequent delivery is essentially executory. See opinion of Gibson in Pritchett v. Jones supra; Hutchison v. Hunter, supra; Davis v. Miller, 12 Southern Rep. 27; Whitney v. Hall, 47 N. W. Rep. 27.

We are of the opinion that the contract in this case was executory and that the plaintiffs at the time of the service of the writ of replevin in this case had not a clear right to the possession of the property and that they cannot therefore recover in the case. In this view of the case it is not important just how many logs the defendants placed upon the landing nor what they were worth per thousand feet, nor whether the defendants had cut and banked all the timber upon the lot nor just what the state of the accounts was between the parties, at the impetration of the plaintiffs' writ.

All these questions may come before the court in the litigation hereafter.

The parties to this contention are intelligent and responsible men. It seems passing strange that they should persist in this litigation, when it is so entirely apparent that each can get by an adjustment of it just what he is entitled to under the contract, without loss to either. No rights of third parties intervene; this contract is an existing and a solid one. A half hour's investigation of the evidence of the witnesses who measured the logs will determine every disputed question of fact in the case, and yet the field for litigation, which the parties seem determined to explore, is a broad one; and while it may be an interesting one yet its final result will tend little towards an adjustment of the actual equities of the parties.

*Error assigned* was in entering judgment for defendants.

*W. I. Lewis,* of *Larrabee & Lewis, H. C. & S. T. McCormick* with him, for appellants.—The logs were cut, skidded and delivered on the bank of the stream, marked with our mark, measured and scaled by our scaler and accepted by us. These

several acts constituted a sale and delivery, and vested the property in us, as well as the right of possession: Gonser v. Smith, 115 Pa. 452; Winslow, Lanier & Co. v. Leonard, 24 Pa. 14; Hazard v. Hamlin, 5 Watts, 202.

Replevin lies for property in possession of the defendant whether the property is absolute or qualified: Wood v. Nixon, Addison, 134; Harlan v. Harlan, 15 Pa. 507; Miller v. Warden, Prue & Co., 111 Pa. 300; Midvale Steelworks v. Hallgarten, 15 W. N. C. 47; Ferguson v. Rafferty, 128 Pa. 337; Ferguson v. Lauterstein, 160 Pa. 427; Hance v. Tittabawassee Boom Co., 70 Mich. 227; Bethel Steam Mill Co. v. Brown, 57 Me. 1.

While we maintain that there was actual delivery in this case, yet if it should be held that there was not a delivery, a sale without delivery of possession divests the ownership of the vendor as between him and his vendee, and if possession is withheld, replevin may be maintained for the goods: Croft v. Jennings, 173 Pa. 128; Boyle v. Rankin, 22 Pa. 168; Hetrick v. Campbell, 14 Pa. 263; Janney v. Howard, 150 Pa. 339.

*Dornan & Ormerod* and *J. Newton Peck*, for appellees, were not heard, but argued in their printed brief: This was an executory contract: Pritchett v. Jones, 4 Rawle, 260; Mc-Call v. Webb, 88 Pa. 150; Lester v. McDowell, 18 Pa. 91; Dougherty v. Haggerty, 96 Pa. 515; Whitney v. Hall, 82 Mich. 580; Herrman v. Whitescarver's Administrators, 89 Ky. 633; North Pacific Lumbering Co. v. Kerron, 5 Wash. St. Rep. 214; Davis v. Miller, 12 S. Rep. 27; Hutchinson v. Hunter, 7 Pa. 140; Sneathen v. Grubbs, 88 Pa. 147. The title would not pass until the delivery contracted for by the parties: Scull v. Shakespear, 75 Pa. 297; Mitchell v. Lucas, 37 Pa. 187; Nesbit v. Burry, 25 Pa. 208; Tiedeman on Sales (1891 ed.), section 83; Smyth v. Craig, 3 W. & S. 14; Susquehanna Boom Company v. Finney, 58 Pa. 200; Kent I. & H. Company v. Norbeck, 150 Pa. 559; Swift v. Morrison, 2 W. N. C. 699.

PER CURIAM, May 25, 1896:

By agreement filed, trial by jury was waived, and the case was submitted to the learned president of the common pleas. An examination of the record has failed to convince us that there is any substantial error either in his findings of fact or

conclusions of law; and there appears to be nothing in either of the specifications of error that requires discussion. They are all dismissed, and the judgment is affirmed, on the opinion of the court below.