OLIVIER et al. v. MT. UNION TANNING & EXTRACT CO.

(District Court, M. D. Pennsylvania.   November 16, 1918.)

No. 962.

1. REPLEVIN ⬥⟶8(5)—WHO MAY MAINTAIN—JOINT OWNERS.
    Where at most an assignment could only make plaintiff a joint owner of property held by defendant as joint owner, replevin cannot be maintained; for, being a possessory action, replevin cannot be maintained, unless plaintiff is entitled to immediate exclusive possession.

2. CARRIERS ⬥⟶58—TRANSFER OF BILL OF LADING—EFFECT ON TITLE—BULKY ARTICLES.
    The transfer to plaintiff of bills of lading for a shipment of logwood consigned by the owner to defendant, together with an assignment, etc., held, in view of the bulky character of the property to vest plaintiff with title thereto.

3. SALES ⬥⟶233(3)—RIGHTS AS AGAINST THIRD PERSONS—NOTICE—EVIDENCE—SUFFICIENCY.
    Defendant held to have had notice, etc., of the transfer to plaintiff of logwood consigned to defendant, before the logwood was manufactured into extract.

4. REPLEVIN ⬥⟶108—ACTIONS—RECOVERY OF DAMAGES.
    Replevin is a mixed action, being both a demand for a thing and damages for withholding; and in replevin for property that defendant knew belonged to plaintiff, held, that plaintiff could recover damages for that eloigned.

At Law.   Action of replevin by Marcel Olivier, Maurice Rosier, and Daniel Brun, copartners doing business as Olivier & Co., against the Mt. Union Tanning & Extract Company.   Judgment for plaintiffs.

Fox & Geyer, of Harrisburg, Pa., for plaintiffs.

James S. Woods and H. H. Waite, both of Huntingdon, Pa., for defendant.

WITMER, District Judge.   This is an action of replevin brought by the plaintiffs, Marcel Olivier, Maurice Rosier, and Daniel Brun, copartners doing business under the firm name of Olivier & Co., against the Mt. Union Tanning & Extract Company, for the recovery of 1,576 tons of logwood in the yards and possession of the defendant at Mt. Union, Pa.

The case came on for trial, a jury having been called and sworn, and after proceeding with the trial and taking the testimony of witnesses for plaintiff and some for defendant, upon agreement of counsel, the jury was dismissed, and the case proceeded agreeably to the provisions of the act of April 22, 1874 (P. L. 109).

The plaintiff has alleged that in the month of June, 1916, in the city of New York, the Bothamley Chemical, Color & Extract Company, having arranged to acquire certain logwood then being imported, borrowed from it, the plaintiff, certain sums of money, giving its collateral note promising to repay such sum, and at the same time pledged a lot of logwood, described in certain invoices and weigh notes; that it also by writing assigned said logwood to plaintiff, at-

⬥⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

taching to such instrument bills of lading of the carrier company. It is stated that there were seven individual and like transactions. The plaintiff further alleges that the logwood thereafter came into the possession of the defendant; that when the notes fell due they were not paid, and the plaintiff became entitled to the possession of the logwood. Demand having been made for it, the defendant wrongfully refused to deliver the same to plaintiff.

The plaintiff having filed the required bond, the writ was served by the marshal, and, on failure of defendant to provide a bond for detention, delivery was made to the plaintiff.

The defendant denies the title and right of possession of the plaintiff as alleged, averring generally that such was and always belonged to it, for that in May, 1916, the defendant entered into a contract with the Bothamley Chemical, Color & Extract Company, by which it was agreed that the Bothamley Company would secure logwood to be manufactured by the defendant, the manufactured product to be turned over to the Bothamley Company and sold, the money deposited in a special account, and first used for the payment of the cost of the logwood and freight, and after an allowance of three cents per pound for manufacture, the remaining or net profit to be divided between the two. The defendant further alleges that it had no notice of the plaintiff's claim to the wood until October, 1916; that it had manufactured all or nearly all of the wood into extract and was willing and ready to manufacture the balance as undertaken and agreed with the Bothamley Company; that under its contract with the latter it had received the logwood into its yards, and a certain portion of it was at once taken from the cars and manufactured into extract; that of the 1,576 tons claimed, 984 tons were not stored, but manufactured at once, yielding 787 barrels of extract, of which 700 were delivered to the Bothamley Company, which in turn delivered 400 barrels of it to the plaintiff, of the value of $60,000, which the plaintiff neglected to credit to the Bothamley Company. The defendant also denies the authority of the Bothamley Company to transfer and assign the logwood purchased from H. Mann & Co., being 815 tons of the amount embraced in the total shipment of 1,576 tons, claiming that such purchase was the joint purchase of the defendant and the Bothamley Company. It is further contended that the wood was so commingled in plaintiff's yards that it was not possible to determine how much, if any, of the wood in question was remaining, and, further, that if there was any there defendant had a lien upon it for any balance due from the Bothamley Company on final settlement of their account.

The issue here presented is one of ownership and right of possession of the property in dispute. The plaintiff's claim of title is clearly and fully set forth in its declaration, with an averment of wrongful dispossession, and this it is bound to sustain by the fair weight or preponderance of the evidence in order to maintain its action. Has it done so?

The matter can be best understood and more readily disposed of by considering individually the logwood purchased from H. Mann

& Co., as distinguished from the wood obtained through other sources from the Bothamley Company. Now, as to the former, the court is readily satisfied, and so finds, that the purchase was made by the defendant jointly with the Bothamley Company, and that the defendant obtained delivery and full possession of the same without any knowledge of the assignment or attempted assignment of it by the Bothamley Company to the plaintiff. Were a discussion of the proof here required in support of this conclusion, it could be readily supplied; suffice to say that plaintiff well knew, judging from the notes and agreements in evidence, that it was supplying only half of the money to pay for these shipments. Had plaintiff made diligent inquiry, as it was in duty bound, it could readily have ascertained that the defendant had obligated itself for the other half, for which it ultimately made payment, and thus ascertained the real and complete ownership of the property to which it sought title.

[1] Though the Bothamley Company did assign to the plaintiff this wood, it nevertheless remains that defendant was not affected thereby since such assignment could only in effect operate to substitute the assignee for the assignor as the joint owner of the defendant; assuming now that these assignments, of which more will hereafter be said, were sufficient to convey ownership of the property recited. It follows, therefore, that the most favorable position that can be allowed plaintiff is to concede to him, jointly with defendant, ownership of the purchases and shipments from H. Mann & Co., which admittedly will defeat its right to recovery to this extent. The action of replevin, being a possessory action, cannot be maintained unless the plaintiff established property and the exclusive right of immediate possession. Lake Shore & Michigan Ry. Co. v. Ellsey, 85 Pa. 283; Strong et al. v. Dinniny, 175 Pa. 586, 34 Atl. 919; McFarland Meade Co. v. Doak, 63 Pa. Super. Ct. 31.

Having decided in Reinheimer v. Hemingway, 35 Pa. 432, that one tenant in common of a chattel cannot maintain replevin for it, without joining his cotenants, Justice Strong, in delivering the opinion of the court, said:

"An action of * * * replevin * * * operates specifically upon the chattel. If it can be brought by one of three tenants in common, it may be by each of the others. And if the writs be in the sheriff's hands at the same time, how is the property to be replevied? In Hart v. Fitzgerald, 2 Mass. 511 [3 Am. Dec. 75], it was ruled that a part owner of a chattel cannot maintain replevin for his undivided part, and if it appear in the writ, the court will arrest the judgment. Part ownership in another is therefore pleadable in bar, and not exclusively in abatement. So in Rogers v. Arnold, 12 Wend. [N. Y.] 30, it was held that, if the plaintiff in replevin fail to establish an exclusive right in himself to possess and control the property, the defendant is entitled to a verdict."

[2, 3] Taking up the remaining shipments, aggregating 761 tons, purchased by the Bothamley Company from the Fruit Dispatch Company and the American Products Exchange, it may be noted that each and every of them was secured to the plaintiff for the purchase money, advanced by check payable to the vendor for the logwood purchased by the Bothamley Company giving its note to plaintiff,

collateral in form, promising to repay the amount in three months, and an instrument assigning and transferring unto the plaintiff the respective shipments of logwood. Accompanying the collateral note was the original invoice for this wood, together with the weigh notes further describing it. Subsequently the Bothamley Company delivered to the plaintiff the bills of lading of the Pennsylvania Railroad Company, consigning the shipment to the defendant. Accompanying the bills of lading was the written assignment mentioned, transferring and assigning to the plaintiff all of its right, title, and interest in and to the logwood, which assignment was in terms supplemental to the assignment contained in the collateral note, and subject to all the terms thereof.

This arrangement between the parties is undoubtedly binding, and vested the title to the property in the plaintiff. The bulky character of the property rendering it difficult of actual physical delivery, the transfer of such is as a general custom usually made by symbolic delivery; that is, by the transfer of bills of lading, warehouse receipts, or other documents, describing the property and showing the location and possession of it. That the title to property of such character under the circumstances may be shifted by the delivery of such evidences of ownership, and without actual physical delivery, has been held in the well-recognized case of Century Throwing Co. v. Muller, 197 Fed. 252, 116 C. C. A. 614, where the court took judicial notice of the special custom concerning such transactions. Whether such transfer of title without actual physical delivery is, however, binding upon third parties generally without notice, need not be here decided; it being established that the defendant had knowledge of the transfer of title by the Bothamley Company to the plaintiff before the same passed out of its possession, either in its raw state or as manufactured into extract. It is not difficult to find that the defendant was without notice of the plaintiff's claim of title until October, 1916. The written agreement between the Bothamley Company and defendant bore the date of May 24, 1916. Delivery was made during the month of June following. Defendant contends that a portion, if not the greater portion, of the deliveries or shipments, were used up from aboard cars and manufactured into extract as delivered in its yards by the railroad company without storing, and that the product thereof was immediately turned over to the Bothamley Company without knowledge of the plaintiff's claim, and that the remaining portion, which was stored, was so commingled with its own wood that it was impossible to distinguish it or to determine the amount so stored. That the latter contention is true can hardly be doubted, and whether such commingling was due to the negligence of the defendant, or resulting necessarily from the method or means usually employed in the course of manufacturing liquid extract at defendant's plant, is not deemed important in the face of defendant's admissions.

In reply to a letter of October 2, 1916, written to defendant by plaintiff's attorneys, advising it of its claim on the logwood purchased and shipped at the instance of the Bothamley Company, transmitting

therewith a list of shipments in detail, and furthermore requesting advice as to the location of each carload lot, defendant promised in return a few days later to write fully after investigation and checking of figures submitted. The matter was then no doubt turned over to defendant's attorney, who opened a correspondence with plaintiff's attorneys regarding the assignment and the location of the wood, lasting until the latter part of February, 1917. It may not be important, but it does not appear that it was at any time hinted that the wood or any portion of it was no longer in defendant's yards at Mt. Union. In fact, the correspondence proceeds on the assumption that it was all there. However, during the beginning of January, 1917, plaintiff's agent, E. H. Peck, visited Mt. Union, and states that he was there informed by Mr. Green, president of the defendant company, that the wood was piled in the yard with other wood belonging to the Mt. Union Company and the Bothamley Company.

Referring to Mr. Peck's visit and his report of what he heard and saw, the plaintiff on January 23, 1917, wrote to defendant, amongst other things, inquiring about insurance on the wood. Several days thereafter, the defendant replied by wire: "Letter received and have no insurance on wood." The same day, January 26th, the defendant company confirmed by letter the telegram and added:

"In regard to shipping hematine in your name, would advise that there is no danger of shipping any extract from your wood, as we think there is considerable quantity here yet in addition to yours. We will be careful about this."

The insurance was perfected and the correspondence continued; defendant again, in letter dated January 29th, addressed to plaintiff, stated:

"We will take up with Bothamley the matter you propose about shipment, although we have not yet reached any of your wood. No doubt they are very anxious to get it cleaned up."

March 8th, the plaintiff reimbursed defendant by check $6,016.57 for freight advanced by it on these shipments of the Bothamley Company, according to conference between Mr. Green and Mr. Peck upon the latter's visit to Mt. Union.

Considerable correspondence passed between the parties in the plaintiff's effort to have the wood turned into extract and shipped to plaintiff, without result. Finally on November 24, 1917, after Mr. Peck visited the yards of defendant with a prospective purchaser for the wood, the plaintiff wrote a letter to defendant, advising it that the wood had been sold to the man who visited the yards with Mr. Peck, and directed shipment of it to Marietta, Ohio. To this the defendant replied:

"This wood was sent to us without any notice whatever of any claim being upon it until after it had been in our yards, mixed up with a lot of other wood. It came to our yard in the usual course of business, and no notice was received by us that anybody had any claim upon this wood until long after it had been received. Some of it has been used and manufactured, and some of it may be still in the yard; it may all have been manufactured."

Finally, on account of the conflicting claims of other parties to the wood, the defendant stated, it was obliged to refuse permission to remove it.

No other conclusion can be fairly deduced from the evidence referring to the admission of the defendant preceding the payment of the freight charges by the plaintiff than that it retained possession of the wood now in dispute. That the president, being in charge of the business, could be so wide of the mark and so badly mistaken as is now argued by his counsel would be attributing to him a want of business grasp and attention, and such lacking of care in the use of assertions in letter writing, of which the court would hesitate to convict him. Surely it must be accepted that the wood was in defendant's yard, and all of it, when the defendant gave plaintiff the assurance that there was considerable there yet in addition to its wood, promising to be careful about the matter, and then afterwards repeating that none of defendant's wood had yet been reached. If, subsequently, this wood was used, or in any shape, as extract or wood, it was removed from the yard, the defendant cannot be heard to complain that it was indistinguishable from its own, having been responsible for its disposition. It follows, and the court so finds, that 515 tons delivered by the marshal to the plaintiff was wood belonging to the plaintiff. This was the weight of a quantity of wood after storing and drying in defendant's yard for a period of a year and over. What portion of the 761 tons, weighed when green and unseasoned, does this represent? The loss by seasoning has been variously estimated. The defendant and one of his witnesses have testified to an experiment made to ascertain this by weighing a number of sticks when green, or on receipt of same in the yard, and then again after thorough drying, resulting in loss of 30 per cent. Common experience teaches that this result is more reliable than the estimate of 6 per cent. loss as testified by plaintiff's witness as the basis for the calculation. Applying this to the tonnage in dry wood seized (515) produces approximately 670 tons, and being accepted on a calculation the 515 tons of seasoned wood represents approximately 670 tons of the 761 tons of wood in the green state, thus leaving 91 tons eloigned.

[4] Replevin is a mixed action, being both the demand for a thing and damages for the taking and detention. It is not only a proceeding in rem, but also a proceeding against the defendant in the writ personally with a summons to appear. This was so previous to the act of July 9, 1901 (P. L. 614), which recognizes merely the previous decisions of our courts, holding to this principle. Wetherill v. Gallagher, 211 Pa. 311, 60 Atl. 905, 107 Am. St. Rep. 575; Hoyt v. Carson, 60 Pa. Super. Ct. 175; Baldwin v. Cash, 7 Watts & S. (Pa.) 425; Bower v. Tallman, 5 Watts & S. (Pa.) 556. In the latter case, Justice Kennedy, speaking for the court, said:

"Thus it has been held, even in England, where the maintenance of the action of replevin is much more restricted than in Pennsylvania, the plaintiff may recover damages from the defendant equal to the value of the property, when taken by the latter tortiously or without authority, where he has put it out of the power of the sheriff or proper officer to execute the writ by replevy-

ing and delivering the property up to the plaintiff, or where, from other causes, it may have become impracticable for the officer to do so. As, for instance, where the cattle are eloigned by the defendant, the plaintiff may, instead of proceeding to obtain a writ of withernam, for the purpose of taking other cattle in lieu of those eloigned, proceed in the cause, if the cattle be withheld by the defendant, and recover damages to the full value of them, as well as damages for the detention."

The plaintiff, having fixed the price of wood at $29.50 per ton, cannot complain if this is accepted in estimating the damages at $2,-684.50 for the wood eloigned and interest upon this amount from January 29, 1917, date of marshal's demand, for detention.

The court therefore finds in favor of plaintiff and against the defendant as and for damages in the sum of $2,810.72.