## Loughry, Administrator, v. Fisher.

*Replevin — Possession — Plaintiff's rights — Evidence—Non-suit—Act of April 19, 1901.*

1. At common law, if a plaintiff in replevin failed to establish an exclusive right in himself to possession or control of the property, the defendant was entitled to a·verdict, and a compulsory non-suit or binding instructions were proper.

2. Under the Act of April 19, 1901, P. L. 88, where the plaintiff in replevin introduces evidence in support of his action, the case is for the jury, and the entry of a compulsory non-suit is error.

Motion to take off non-suit. C. P. York Co., Aug. T., 1921, No. 31.

*R. P. Sherwood* and *J. E. Kunkle*, for plaintiff and motion.

*John J. Bollinger*, for defendant.

Ross, J., Feb. 4, 1924.—This action was brought for the purpose of securing possession of certain bonds and certificates of stock which the plaintiff alleges were the property of one James L. Cribbs, late of the City of Buffalo, in the State of New York, deceased.

It appears by the pleadings and the evidence that the said James L. Cribbs died intestate at Buffalo, New York, on Dec. 2, 1920; that ancillary letters of administration were granted to the plaintiff by the register of wills in this county on May 12, 1921. He resides in Hempfield Township, Westmoreland County, Pennsylvania. The decedent had been married to the plaintiff's daughter and was divorced from the bonds of matrimony more than five years before. There were two daughters living, aged eighteen and sixteen years. The mother and daughters never lived with the deceased after the divorce.

The claim of the plaintiff in his statement is as follows: "That James L. Cribbs, the decedent, in his lifetime, prior to Oct. 11, 1920, acquired title to one 2nd U. S. Liberty Loan Bond, No. 2359563, of the par value of $100; one 3rd U. S. Liberty Loan Bond, No. 5549902, of the par value of $100; one 4th U. S. Liberty Loan Bond, No. 8317277, of the par value of $100; one 4th U. S. Liberty Loan Bond, No. 8317278, of the par value of $100;

one 5th U. S. Liberty Loan Bond, No. 762997, of the par value of $500; one 3rd U. S. Liberty Loan Bond, No. 13218317, of the par value of $50; one 3rd U. S. Liberty Loan Bond, No. 13218318, of the par value of $50, by purchase from various agents of the U. S. Government having said bonds for sale.

"4. Plaintiff further avers that the decedent in his lifetime, prior to Oct. 11, 1920, by purchase from the Lehigh Valley Railroad Company, acquired title to certificate P-23221, for ten shares of the common stock of the Lehigh Valley Railroad Company; that neither the defendant nor any other person or persons has any right, title, right of possession or property in or to the personal property herein mentioned.

"5. Plaintiff further avers that subsequently, to wit, on or about Oct. 11, 1920, the decedent, James L. Cribbs, in his lifetime delivered to the defendant, Olive C. Fisher, one 2nd U. S. Liberty Loan Bond, No. 2559563, of the par value of $100; one 3rd U. S. Liberty Loan Bond, No. 5549902, of the par value of $100; one 4th U. S. Liberty Loan Bond, No. 8317277, of the par value of $100; one 4th U. S. Liberty Loan Bond, No. 8317278, of the par value of $100; one 5th U. S. Liberty Loan Bond, No. 762997, of the par value of $500; one 3rd U. S. Liberty Loan Bond, No. 13218317, of the par value of $50; one 3rd U. S. Liberty Loan Bond, No. 13218318, of the par value of $100; one certificate, No. P-23221, for ten shares of the common stock of the Lehigh Valley Railroad Company, for safekeeping; that no title to said bonds and certificates of stock passed by said delivery, but that defendant then and there became the agent of said decedent, James L. Cribbs, for the safekeeping of said bonds and certificate of stock."

The affidavit of defence averred that:

"3. The defendant admits that she has in her possession one U. S. 1st Convertible Liberty Loan Bond, No. A00278676, of the par value of $100; one 2nd Convertible U. S. Liberty Loan Bond, No. C019989993, of the par value of $50; one 3rd U. S. Liberty Loan Bond, No. 1195159, of the par value of $100; one 4th U. S. Liberty Loan Bond, No. F02155216, of the par value of $100; one 4th U. S. Liberty Loan Bond, No. G02155217, of the par value of $100; one 5th or Victory U. S. Liberty Loan Bond, No. G762997, of the par value of $500; that all of said bonds, except the 5th or Victory Loan Bond, are permanent bonds received by the defendant from the United States Government in exchange for temporary bonds heretofore issued by the United States Government.

"4. The defendant avers that the said temporary bonds and the said Victory Bonds were given to the defendant by James L. Cribbs, the decedent, in his lifetime, at various times, from the fall of the year 1917 to sometime prior to June, 1920, in trust, however, that the said defendant should take care and custody of said bonds and collect the interest due thereon, and to pay the interest so collected, or any part or all of the principal of the said bonds, to Elizabeth Cribbs, mother of the said James L. Cribbs, if, in the discretion of the defendant, the said Elizabeth Cribbs needed any or all of the moneys represented by the said bonds, for her support, care and maintenance. And on the death of the said James L. Cribbs to use the principal and interest of the said bonds for the support, care and maintenance of the said Elizabeth Cribbs, in such manner and in such amounts and at such times as the said Olive C. Fisher may think proper for the purpose of the fulfillment of the said trust; and in trust, further, that upon the death of the said Elizabeth Cribbs, to divide the said bonds or the moneys arising from the sale thereof, if any of the said bonds or moneys shall remain unexpended, equally amongst James

Topper, John Topper and Serena Fisher, nephews and niece of the said James L. Cribbs; that the said Olive C. Fisher has no personal interest in the said bonds and derives no benefit therefrom, but holds the said bonds as trustee for the purposes above set forth.

"5. The defendant further avers that on or about Oct. 11, 1920, the decedent in his lifetime gave and delivered to the defendant a certificate of stock for ten shares of the capital stock of the Lehigh Valley Railroad Company in the name of James L. Cribbs; that the said certificate of stock was duly assigned in blank by the said James L. Cribbs prior to the delivery thereof to the defendant; that the shares of stock represented by the said certificate were given to the defendant in trust for the same purposes and uses as were impressed upon the United States Government Bonds as hereinbefore set forth; that at the time of the delivery of said stock, the said James L. Cribbs instructed and directed the defendant to transfer the said stock to any person that she may desire; that since the death of the said James L. Cribbs, the defendant transferred the said stock to J. Gordon Fisher, in whose name a new certificate for the said stock was issued, and the transfer thereof noted upon the books of the said Lehigh Valley Railroad Company, and that the defendant does not now have in her possession the said certificates of stock."

The plaintiff, at the trial, showed in substance that James L. Cribbs, the decedent, in his lifetime, prior to Oct. 11, 1920, acquired title to certain United States Bonds and certain certificates of corporate stock of the Lehigh Valley Railroad Company. The former wife of decedent, who had been divorced from him, was married to another man more than three years prior to his death, and the daughters lived with the mother. The decedent, at the time and prior to the time of his death, was a lieutenant on the police force of the Lehigh Valley Railroad, at Buffalo. He was shot to death on Dec. 2, 1920, while performing the duties of his office. A witness called Robert O. Whitton testified that he was acquainted with the decedent and had met the defendant in this case sometime between the 2nd and 4th of December, 1920, at the house of the decedent's father, in Jeanette, Pennsylvania, and conversed with her as follows: "We were at the home of James L. Cribbs; we were talking about his financial conditions, and likewise Mrs. Fisher and some of the others were talking to me about settling the estate, and I said that, for the past few years, Jim had been doing his best to save up some money; that he had subscribed very liberally for Liberty Bonds, and that on some occasions when he had obtained some of these bonds, I remarked to him, 'Come on, let's go out and spend them,' and he said, 'No, I am going to send these down to Olive; she is my banker; she takes care of them for me,' and Mrs. Fisher replied, 'Well, it is true; I have nine hundred dollars' worth of bonds that he sent me.' " The witness admitted that he is the administrator of the estate of James L. Cribbs, deceased, in the State of New York.

An exhibit of plaintiff, marked "No. 1, G. M. D.," and an exhibit of plaintiff, marked "No. 2, G. M. D.," were offered and admitted in evidence, No. 1 being:

"Buffalo, New York, Oct. 11, 1920.

"Dear Olive: 10 shares of L. V. stock inclosed signed, so in case anything may happen you can sell or transfer to suit.

"Love to all, your bro., JIM."

"Plaintiff's Exhibit No. 2" reads as follows:

"Hanover, Penna., March 30, 1921.

"Dear Captain Whitton: Owing to Serena's and my own attack of grippe have not been able to give your letter attention before. I will send you a

certified copy of the part of letter sent by Jim giving me the stock, as the rest of the letter is purely personal, will not have that copied.

"The check I sent was for the balance in the bank at the time of Jim's death. There were other funds due Jim and available from railroad, and I fully realize there were expenses. All expenses did not have to be taken from bank balance, as he would have considerable more, all told. So presented my check—and if I had been able to administer would have deducted expenses as you have, and used remainder of funds as Jim requested and directed it to be divided equally, after necessary expenses were paid, between Jimmy and John Topper, nephews, and Serena Fisher, niece.

"It was not necessary for checks to be dated, and I knew that I could not have a check honored by any bank if the person it was drawn on was dead, and only by presenting it to the administrator was the only channel, and you were administrator, so I sent it to you.

"I visited Jim about the 18-20th of last June, and at the time begged him to put in writing all he told me regarding his affairs. Later, he wrote my mother, saying he had made a will and I knew the contents. At any rate, we have not found a copy of his will.

"Certainly wish to thank you, Capt. Whitton, for all the trouble you have taken for us, and feel sorry things are so unsettled and apparently the reverse of my brother's wishes.

"Thank you so much for inquiring for cats. After your letter; in fact, only last week, Mrs. Benedict's daughter wrote, sending the address of party who sold cat to Jim. So I will not think of troubling you any further, for you are so busy and have so much to do. I appreciate very much all your trouble and efforts and know that Serena will be delighted when she can have a kitten as near like her dear old Mike as we can obtain.

"I remains yours most sincerely, Olive C. Fisher."

An offer was made by plaintiff's counsel, which, together with the objection thereto by defendant's counsel and the ruling of the court thereon, are as follows:

"Mr. Sherwood: The plaintiff now offers in evidence paragraph 3 of the affidavit of defence, which is as follows: 'The defendant admits that she has in her possession one U. S. 1st Convertible Liberty Loan Bond, No. A00278676, of the par value of $100; one 2nd Convertible U. S. Liberty Loan Bond, No. C01998993, of the par value of $50; one 3rd U. S. Liberty Loan Bond, No. 1195159, of the par value of $100; one 4th U. S. Liberty Loan Bond, No. F0155216, of the par value of $100; one 4th U. S. Liberty Loan Bond, No. G02155217, of the par value of $100; one 5th or Victory U. S. Liberty Loan Bond, No. G762997, of the par value of $500; that all of said bonds, except the 5th or Victory Loan Bond, are permanent bonds received by the defendant from the United States Government in exchange for temporary bonds heretofore issued by the United States Government,' for the purpose of showing all the facts and circumstances in connection with the exchange of the temporary bonds delivered by the decedent to the defendant for the permanent bonds of the numbers set forth in said paragraph 3, and for the further purpose of identification, and generally sustaining the issue on the part of the plaintiff.

"Mr. Bollinger: It is objected to, for the reason that there is nothing in the paragraph that shows that the bonds enumerated are any bonds that ever belonged to the decedent in his lifetime, or that they are bonds of the United States Government, received by the defendant in exchange for temporary

bonds, which temporary bonds ever belonged to the decedent in his lifetime, or were delivered by the decedent in his lifetime to the defendant.

"The Court: It is admitted for the purpose offered, for the present, together with the evidence heretofore admitted and to be subsequently admitted. An exception is sealed for the defendant."

The plaintiff, after trying in vain to have received such excerpts from the whole of certain paragraphs, without offering the whole paragraph, to prove that demand was made by plaintiff of defendant for delivery of the bonds and stocks mentioned in plaintiff's statement, and the consequent refusal by the defendant to deliver to the plaintiff said stocks and bonds, rested his case, when, on motion of defendant's counsel, the court granted a compulsory non-suit.

It is well established in Pennsylvania, by decisions of our appellate courts, that "In an action of replevin, which is a possessory action, the plaintiff must clearly establish either a general or special property in the goods replevied and his right to possession, which right must be exclusive to authorize a delivery of the property to him:" McFarland-Meade Co. v. Doak, 63 Pa. Superior Ct. 27, 31 (opinion by Mr. Justice Kephart, now a Justice of the Supreme Court).

"If the plaintiff in replevin fail to establish an exclusive right in himself to possess and control the property, the defendant is entitled to a verdict:" Reinheimer v. Hemingway, 35 Pa. 432, 438 (opinion by Mr. Justice Strong).

"In replevin under the plea of property, the defendant is at liberty to show either a general or special property in himself, and he is not bound to give notice to the plaintiff that he claims under any special title. The plea of property imposes on the plaintiff the necessity of establishing his title and the right of exclusive possession:" Mathias v. Sellers, 86 Pa. 486.

"Replevin cannot be maintained without showing either a general or special property in the plaintiff, together with the right of immediate possession:" Strong, Deemer & Co. v. Dinniny, 175 Pa. 586-591.

"Replevin cannot be maintaned without showing a general or special property in the plaintiff, together with immediate right of possession, and unless the plaintiff offers evidence to establish his right of immediate possession, the court commits no error in entering a compulsory non-suit:" Stone v. Rogers, 17 Pa. Superior Ct. 358.

An examination of the records, after an examination of the foregoing cases, goes to show that the trial judge properly entered a compulsory non-suit under the law as it existed in Pennsylvania until the Legislature of 1901 changed the well-settled methods of procedure in actions of replevin by the passage of an act entitled "An act relating to replevin, and regulating the practice in cases where the writ of replevin is issued," approved April 19, 1901, P. L. 88. The 6th section of that act says: "The declaration and affidavit of defence . . . filed . . . shall constitute the issues under which, without other pleadings, the question of the title to, or the right of possession of, the goods and chattels as between all the parties shall be determined by a jury."

In considering the motion made by the learned counsel for the defendant, the trial judge evidently forgot that requirement of the said Act of 1901. We have searched in vain for an authority which would warrant the entry of a compulsory non-suit when the determination is by jury, and believe that the statute is mandatory in its requirement that "the issues," "the questions of the title to, or the right of possession of, the goods and chattels as between all

Loughry, Administrator, *v.* Fisher.

the parties shall be determined by a jury." See Renner *v.* Stephens, 76 Pa. Superior Ct. 596.

The error of entering the compulsory non-suit is now acknowledged, and a new trial by jury should be ordered.

And now, Feb. 4, 1924, the non-suit granted at the trial of this case is taken off and the motion for a new trial is sustained.

From Richard E. Cochran, York, Pa.