## Mathias *versus* Sellers *et al.*

1. The rule that a tradesman has a lien for work done on goods deposited with him for manufacture, is not waived by a special agreement merely for the payment of a fixed sum for the labor done on the goods.

2. Replevin cannot be maintained against a tradesman for goods left with him for manufacture, until his charges for work done on the goods have been first paid or tendered.

3. Macky *v.* Dillinger, 23 P. F. Smith 85, distinguished.

4. In replevin, under the plea of property, the defendant is at liberty to show either a general or special property in himself, and he is not bound to give notice to the plaintiff that he claims under any special title. The plea of property imposes on the plaintiff the necessity of establishing his title and the right of exclusive possession.

[Mathias *v.* Sellers.].

5. Where parties without objection or remonstrance, have gone to trial on the merits of a cause, this court will refuse to reverse, although the pleadings made no issue for the jury.

6. Gillespie *v.* Goddard, 1 Pittsburgh Rep. 306, discussed, and its authority questioned.

March 25th 1878. Before SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. AGNEW, C. J., absent.

Error to the Court of Common Pleas of *Montgomery county :* Of January Term 1876, No. 57.

Replevin by William B. Sellers and John Henry Radey, trading as Sellers & Radey, against Abner J. Mathias, for a lot of cigars which were manufactured by defendant for plaintiffs, from tobacco furnished by the latter. The defendant having entered a claim property bond, pleaded "*non cepit*" and "property." It appeared at the trial that Mathias, who is a cigar manufacturer, in the fall of 1872, entered into an agreement with the plaintiffs, who are tobacco merchants, whereby the latter were to furnish defendant with tobacco at certain specified prices, which was to be manufactured by him into cigars of such kinds and brands as the plaintiffs from time to time might designate. Fixed prices were to be allowed for the manufacture of the cigars, according to their quality, and advances were to be made to the defendant for wages and for the stamps for the cigars, as the work progressed and the cigars were delivered. Mathias also had the privilege of selling to others at the prices fixed. If any of the tobacco should prove to be inferior in quality, a corresponding deduction was to be made in the price of the cigars. On the 6th of November 1873, the defendant had 90,000 cigars in his possession, manufactured as per agreement. The stamps were procured and paid for by plaintiffs. When they sent an agent to remove the cigars, Mathias refused to consent to their removal until a settlement had first been made. It appeared upon examination of the accounts that the defendant owed plaintiffs for tobacco, including stamps, &c., about $2885. The cigars in the hands of defendant were of the value of about $2820, and he alleged that some of the tobacco was damaged, and that some cigars had not been paid for, and that if the cigars had been removed, Sellers & Radey would have been indebted to defendant in a considerable amount; alleged to be $700. No tender of this sum or any part of it was made before Mathias refused to allow the cigars to be removed. It was alleged, and evidence was offered to show, that there was a special agreement with reference to these 90,000 cigars, and that by its terms the stamps were to be paid and the cigars were to be taken away, and that thereafter a full and final settlement was to be made. Such an agreement was denied by defendant. The defendant submitted the following points, with which are given the answers of the court:

1. If the jury find that if upon the delivery of the cigars to Sellers & Radey there would have been anything due to Mathias

[Mathias *v.* Sellers.]

upon the price, the plaintiffs cannot recover in this case without a tender of the amount so due before suit.

Ans. "We decline to affirm this point : and for further answer we refer to the general charge."

2. Mathias had a right to retain the cigars until the payment of the price agreed upon, and if any of the price remained unpaid, the plaintiff had no right to maintain this action without first tendering to the defendant the full amount due.

Ans. "If the conclusions stated in this point be true, as matters of law and fact, the plaintiffs cannot maintain this action unless they first tendered the defendant the amount in full of the unpaid purchase-money, of which there is no evidence."

In their general charge, the court, Ross, P. J., inter alia, said:

"I am requested to charge you that inasmuch as it appears that the work in manufacturing the cigars had not been fully paid at the impetration of the writ, Mr. Mathias had the right to retain them as security for his payment, and that the plaintiffs had no right to the possession of the cigars until they had paid this amount, or tendered its payment. It is true, that a mechanic or a manufacturer has a lien upon goods, on which or over which he has expended his labor, until he is reimbursed. Thus, if I give a tailor cloth, out of which he is to make me a suit of clothes, he may hold the garments until I pay him for his labor, or offer to pay him by tender legally made.

"[Were it not for a comparatively recent decision of our court of last resort, I should rule that this action could not be maintained because the amount is still due, being over $200, and there is no evidence of any tender ; but in a recent case a rule has been adopted in cases of this character, and it is declared that in actions of this class, when goods are the subject of a lien or charge, the charge upon them can be enforced by way of recoupment : Macky *v.* Dillinger, 23 P. F. Smith 85.]"

"[I charge you, therefore, that the existence of a balance due the defendant, for work done in manufacturing these cigars, will not defeat the plaintiff's right to maintain this form of action.]"

The verdict was for plaintiffs for $2809.14, with 6 cents costs. After judgment thereon, defendant took this writ, assigning for error the refusal of his points and the portions of the charge in brackets.

*B. M. Boyer* and *J. Wright Apple*, for plaintiff in error.—
Every bailee for hire who by his labor and skill imparts an additional value to goods has a lien upon the property for his compensation : 2 Kent's Commentaries 635 ; Story on Bailment 440 ; McIntyre *v.* Carver, 2 W. & S. 392 ; Pierce *v.* Sweet, 9 Casey 151 ; Hoover *v.* Epler, 2 P. F. Smith 524. The ruling of the court below was based upon the case of Macky *v.* Dillinger, 23 P.

[Mathias v. Sellers.]

F. Smith 85, which we contend has no application to the case at bar.    In delivering the opinion in that case, AGNEW, J., said: "Set-off does not exist in replevin, but when goods are the subject of a lien or charge, the charge upon them can be enforced by way of recoupment, for the charge is inseparable from the thing itself, and therefore when the value of the thing is to be allowed in damages, the charge necessarily reduces the damages by way of recoupment in order to do justice to both parties." It was the scope of this language which the judge below mistook.    It was quite correct when applied to the particular case in which the opinion was delivered, or to the class of cases to which it might be said to belong.    But surely, it could not have been intended to apply to actions of replevin in general, where there is an existing lien in favor of the defendant.    If it is to be so understood then it sweeps away the old and well-settled characteristics of this form of action, and the right to retain possession is converted into a new right, which is nothing else than the right of set-off.    If it does not mean this, then the right to recoupment comes in only where the right of possession does not exist.    Under the Factor Act of 1834, which ruled the case of Macky v. Dillinger, *supra*, the latter as against the former had the right of possession, because Macky had received the goods as a pledge of security from Moorehead when he knew they were the goods of Dillinger.    Moorehead had parted with the possession, and Macky unlawfully received and held them in possession for his own loan to Moorehead, and demanded, not Moorehead's advance to Dillinger, but his own advance to Macky. He thus brought himself within the principle, that when a party refuses delivery except upon terms to which he is not entitled, he waives his right to a tender of the terms which otherwise he could demand, as an act precedent to the bringing of the suit against him. After that it is true his only remedy is by way of recoupment. This is the ground upon which the ruling in Macky v. Dillinger is expressly put.

*James Boyd*, for defendants in error.—The question of defendant's right to a lien on the cigars, was not raised by the pleadings. Where a plaintiff in replevin has a general right of property, and the defendant justifies under a special right to retain possession, he should set forth the special title in his plea: Gillespie *et al. v.* Goddard, 1 Pitts. Rep. 306; 2 Troubat & Haley 182, ed. 1853: Pearle *v.* Bridges, 3 Saunders 402; Smith *v.* McNeal, 18 P. F. Smith 164; Aiken *v.* Stewart, 13 Id. 33; Reber *v.* Wright, 18 Id. 471.

We fail to see how Macky *v.* Dillinger sweeps away the old and well-settled characteristics of the action; it enunciates no new principle, nor does it establish a principle that will deprive a man of goods that belong to him, through the instrumentality of a writ of replevin; it only enables a man to show the goods are rightfully

[Mathias *v.* Sellers.]

his, and the other man has the right to show they belong to him by reason of the accounts and transactions between them, and in so doing does not do it on the line of set-off. Again, the jury have found the original contract to be that Sellers & Radey were to furnish the tobacco to Mathias at a specified price, which he was to make up into different kinds of cigars and deliver them to Sellers & Rady at fixed prices. The true construction of this agreement is that Sellers & Radey were not to pay Mathias until after the cigars made of this tobacco were delivered to them. If so, there was nothing due to Mathias until they were so delivered or "turned in." This view of the case brings us directly within the ruling in Lee *v.* Gould, 11 Wright 398.

Mr. Justice WOODWARD delivered the opinion of the court, May 6th 1878.

In the fall of 1872, Sellers & Radey, the plaintiffs below, entered into an agreement with Mathias, the defendant, to furnish him with tobacco at prices that were specified. This tobacco was to be worked up by the defendant into cigars of such kinds and brands as the plaintiffs from time to time should designate. Fixed prices for the manufacture of the cigars according to their quality were to·be allowed, and advances were to be made by the plaintiffs to the defendant for stamps and wages as the work should be done and the cigars be delivered.

On the 6th of November 1873, the defendant had manufactured 90,000 cigars, which were in his possession. The stamps for them were procured and paid for by the plaintiffs, who alleged at the trial that an agreement was then made with the defendant by which they were to take them away when stamped, and a full and final settlement was afterwards to be made. Under this agreement the plaintiffs insisted that the right the defendant possessed to retain the cigars as security for the balance due for their manufacture had been waived. There was conflicting evidence on this branch of the case, the defendant denying the existence of the supplementary agreement. The question was one of fact for the jury, but it does not appear to have been submitted. As the court held that the defendant was not in any event entitled to a lien, it became unimportant to ascertain whether it had or had not been waived.

When the replevin issued, the balance of the account of the plaintiffs against the defendant was $2585.40. This sum included $450 paid for stamps on the 6th of November 1873, and $54.65 paid to the sheriff, apparently for expenses in the action. The value of the 90,000 cigars the defendant had made was shown by the testimony to be $2820. Including in the charges against him the $54.65 paid to the sheriff, there was due to the defendant, therefore, the sum of $234.60. Suit was brought without payment or tender of· the amount, and the court charged at the trial that the existence of a

[Mathias *v.* Sellers.]

balance for work done in manufacturing the cigars, did not defeat the right of the plaintiffs to maintain the action.

It has long been a settled rule of the common law, that goods deposited with a tradesman or artizan for manufacture or repair, are subject for the work done on them to a specific lien. Thus, a tailor who has made a suit of garments out of the cloth delivered to him, is not bound to deliver the suit to his employer until he is paid for his services. Neither is a ship carpenter bound to restore the ship which he has repaired; nor a jeweller the gem which he has set, or the seal which he has engraved; nor an agistor the horse which he has taken on hire, until their respective compensations are paid. Story on Bailments, § 440, and the cases there cited. Though the right of lien probably originated in those cases in which there was an obligation, arising out of the public employment, to receive the goods, it is not now confined to that class of persons. A particular lien is given by the common law to any one who takes property in the way of his trade or occupation, to bestow labor and expense upon it. And it exists equally whether there be an agreement to pay a stipulated price, or only an implied contract to pay a reasonable price: 2 Kent's Com. 635. It was said by Holroyd, J., in Crawshay *v.* Homfray, 4 Barn. & Ald. 50, that the principle laid down in Chase *v.* Wetmore, 5 Maule & Sel. 180, where all the cases came under the consideration of the court, was this, that a special agreement did not of itself destroy the right to retain; but that it did so only where it contained some special term inconsistent with that right. In 2 Selwyn's Nisi Prius 540, the rule is stated to be, that the right of detaining a thing until the money due upon it be paid, may be waived by a special agreement as to the time or mode of payment; but not merely by an agreement for the payment of a fixed sum. The existence of the principle in its full reach has been recognised in Pennsylvania. McIntyre *v.* Carver, 2 W. & S. 392, was a replevin for thirty-four panel doors, which McIntyre had made from lumber delivered to him by Carver. The suit was brought without payment or tender of payment for the work McIntyre had done; but while it was pending, the money was offered and received. It was held that the tender and acceptance came too late to help the plaintiff. "The suit was brought," Chief Justice GIBSON said, in entering the judgment, "before the right of action was complete, and such a defect cannot be cured by any subsequent act except a binding agreement not to take advantage of it." In Pierce *v.* Sweet, 9 Casey 151, it was decided that a bailee to whom logs had been delivered to be converted into boards, had a lien on them for his labor independent of any special agreement; and that he could maintain an action against an execution creditor of the bailor by whom they had been taken out of his possession. It is clear, under all the precedents, that unless the defendant here waived his lien by some such new agreement as that which the plaintiffs set up at the trial, he had

[Mathias *v.* Sellers.]

the right to retain the cigars in controversy until he was paid for the work he had done in making them.

Nothing that was decided in Macky *v.* Dillinger, 23 P. F. Smith 85, was in conflict with the settled law of lien. Dillinger consigned goods to Moorehead, who advanced $1500 on them, and then pledged them, with other property, to Macky, to secure a loan for $3700. Macky knew they belonged to Dillinger. When they were demanded by Dillinger, Macky refused to deliver them except on the condition that his loan to Moorehead should be paid. Nothing was said at the time of Moorehead's advances, and in the action of replevin which Dillinger brought, it was held that Macky had no right to set up Moorehead's lien in his own defence; that as against him Dillinger could maintain his action without tendering repayment either of the loan made by himself or of the advances made by Moorehead ; and that the amount of the advances could be recouped from the damages Dillinger was entitled to recover. The decision was stated in the opinion of the present Chief Justice to rest on "the general doctrine of tender, that when a party declines to accept · payment or performance except in a particular way to which he is not entitled, he cannot insist that the action is prematurely brought."

At the argument here, the ground was taken that the pleadings did not present the issue tried in the court below, and that the question of the defendant's right to a lien on the cigars in controversy could not be raised under the pleas of *non cepit* and property. If the point had been made at the trial, it may be that under the authority of Gillespie *v.* Goddard, 1 Pittsburgh. R. 306, a special plea would have been required to be filed; although in the current practice of our courts, questions of lien and of general and qualified ownership have usually been determined upon the pleas that were entered here. *Non cepit* and property were pleaded in McIntyre *v.* Carver. In Murray *v.* Paisley, 1 Yeates 197, the plea was property *absque hoc*, under which the defendant offered to show a submission and award establishing his right to retain the goods in suit in a certain defined contingency. The court said : "The evidence is certainly admissible. The defendant is at liberty under his plea to show either a general or special property in himself, either by bill of sale, delivery from the plaintiff, contract or otherwise. The defendant is not bound to give information to his adversary under what pretensions he claims the article in question." The plea of property imposes on the plaintiff the necessity of establishing his title and the right of exclusive possession : Reinheimer *v.* Hemingway, 11 Casey 432. But it is not proposed to inquire into the scope and force of Gillespie *v.* Goddard as a precedent. Whatever the abstract rule might be held to be, it is too late to invoke it now. The points were presented to the court by the defendant's counsel, and the jury were charged in reference to them without objection or remonstrance. Where parties have gone to trial on the merits of a cause, this court

[Mathias v. Sellers.]

has refused to reverse, although the pleadings made no issue for the jury: Lewisburg Railroad Co. *v.* Stees, 27 P. F. Smith 332. "In this state," Judge SHARSWOOD said in that case, "it is settled that the omission to compel the opposite party to perfect the pleadings beforehand, is a tacit agreement to waive matters of form, just as going to trial on a short plea is a waiver of the right to demand a plea in full form." The merits of the cause were presented by the parties precisely as if a special plea had been upon the record. The points really contested in the Common Pleas are brought up fairly for review, and form the only issues which, with justice to the defendant and his counsel, this court can reach.

Judgment reversed and *venire facias de novo* awarded.