# Swope *v.* Crawford.

*Replevin—Claim property bond.*

Where in an action of replevin, the property is retained and bond given by the defendant, the plaintiff's right to the property is turned into a chose in action; his property in the thing itself is absolutely gone. If the plaintiff subsequently recovers, the defendant is answerable in damages for the taking and detention up to the time of the delivery, and, in addition, for the full value of the property. The property itself can in no event be recovered at law from the defendant; nor can he tender it afterwards, in discharge of the action, or even in satisfaction pro tanto of the damages claimed. Even the right of recaption in the plaintiff is determined by the election of the remedy by action.

*Replevin—Joint defendants—Plea of property—Death of one defendant.*

Where two persons are made joint defendants in an action of replevin and they enter a joint plea, it is competent for the defendants to show title or the right of possession in both, or either of them; and if one of them dies it is competent for the survivor to show that the title and right of possession was in his codefendant.

*Replevin—Title of plaintiff—Evidence.*

Where a title of plaintiff in replevin, if any he has, is derived through

an alleged purchase from one of the defendants, and the plaintiff offers no evidence of any right adverse to that title, it is not material to inquire as to the manner in which the defendant had originally acquired title.

Argued Nov. 16, 1900. Appeal, No. 185, Oct. T., 1900, by plaintiff, from judgment of C. P. Lancaster Co., Sept. T., 1896, No. 17, on verdict for defendant, in case of Adam D. Swope v. Charles Crawford. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Replevin for " one large bay horse."

From the record it appeared that suit was originally begun against Charles F. Crawford and Jesse McComsey. McComsey died and his death was suggested of record. Before McComsey's death defendants gave bond and retained the horse, and subsequently jointly pleaded not cepit and property. At the trial plaintiff claimed that in May, 1896, he bought the horse from McComsey and Crawford for 300 bushels of oats and $20.00 of money. Defendant testified that the horse belonged to McComsey.

Under objection and exception plaintiff was not permitted to ask Crawford whether he sold the horse afterwards and got the money for him. [8]

Under objection and exception plaintiff was not permitted to ask Crawford from whom McComsey got the horse. [9]

The court charged as follows:

The case which is receiving your attention, and which you have been sworn to try, is an action of replevin. On August 19, 1896, the plaintiff, Adam D. Swope, caused a writ of replevin to issue against Jesse McComsey and Charles Crawford, for one bay horse, which he alleged was his property. The sheriff, in whose hands this writ was placed, executed the same, and, finding the horse in the stable of Charles Crawford, which is located on South Christian street, in this city, between East King and East Vine streets, he took him into possession and retained him until a bond was given, whereupon he surrendered him to the defendant. [When a defendant thus gives bond for property replevied, and retains the property, this property becomes absolutely his. The title of the plaintiff, whatever it may have been before, is extinguished, and the case then proceeds sub-

stantially like an action of trespass.] [1] If there is a verdict
for the plaintiff, it is not for the property, but for damages—
that is, ordinarily, the value of the property thus wrongfully
taken, and such would be the measure of damages in this case,
if you find for the plaintiff. The value of the horse, as stated
by him, is $60.00, and he claims interest from August 18, 1896.

[We also wish to state to you, at this point, that the plaintiff
must recover absolutely upon the strength of his own title. If
the defendant's title to the property be weak, or if he has no
title at all, the plaintiff cannot recover, unless he shows a right
to the possession of the goods; for the defendant has, at least,
the possession, which is sometimes said to be nine points of the
law, and that possession is good until the plaintiff proves a bet-
ter right.] [3] In other words, if you have personal property
in your possession, no one has the right to take it away from
you by legal proceedings, unless such person shows a better
right to the possession than that which you may have.

The plaintiff says that this bay horse belonged to McComsey
and Crawford; that, in the latter part of May, 1896, he bought
him from these parties for 300 bushels of oats and $20.00 in
money; that he was to deliver the oats as Crawford wanted it,
at his stable on said Christian street; that he received the horse,
paid $10.00 by a check dated August 1, 1896, on the Northern
National Bank, $5.00 in cash, $5.00 McComsey owed him, and
he hauled and delivered to Crawford's stable 177 bushels of
the oats; that the last load of oats delivered consisted of fifty-
three bushels, on August 18, 1896; that his man, Jacob Sweitzer,
with two horses in his team, one of which was this bay horse,
brought the oats to the city and delivered it to Crawford, and
was then invited by Crawford to have a glass of beer, as he had
been before. On previous occasions, however, they had gone
to the Exchange Hotel, which was a short distance away, as
some of you may, perhaps, know; but, this time, they went
down to a place near the Southern Market House. Sweitzer
left his team, in the meanwhile, at Crawford's. When he re-
turned, he found the bay horse unhitched from his wagon and
in Crawford's stable, and the harness in the wagon. He says
they would not give him the horse, and McComsey told him to
send Swope in to see him.

Swope claims that the deal for this horse was consummated

at the shed of the Exchange Hotel, and Mr. Daniel B. Fry, who was then its proprietor, said that he heard Swope say to Crawford, " he would give 300 bushels of oats, but he couldn't deliver it all at once." He also says : " I heard Crawford say he would take 300 bushels of oats ; " that they were, at that time, talking about the horse, and Swope then got into his wagon and drove away. After this, Crawford and McComsey took the horse to Swope's place, at Greenfield station. When Swope sent the oats, he also sent with each load a bill, there being three bills in all, with total prices marked thereon, which he says were sent merely to inform Crawford what amount of oats he was getting, and, after the bringing of this suit it was testified, he sued Crawford for $53.10, for 177 bushels of oats. It, however, seems that the $53.10 was not actually claimed in that suit, but a sum of $7.00 or $8.00, and, while all the testimony is for your consideration, it appears to the court that the bringing of this suit could have little bearing upon this case.

The testimony of the defendant is that, about May, 1896, Jesse McComsey had a horse boarding at the stable of Charles Crawford ; that Swope met McComsey and came to the stable with him ; that, as his stable hands were busy, Crawford himself brought out the horse, and McComsey and Swope then bargained for him. McComsey wanted $125. Swope agreed to pay $100. A price of $105 was then agreed upon. The witnesses for the defendant say that this money was to be paid in cash and nothing was said about oats. The agreement, as sworn to by Crawford and John Rutter, between McComsey and Swope, was, that Swope was to have the horse for two days on trial, and, if he kept him longer than that, Swope was to pay $1.00 per day for every day after that. You will remember that they say that, when Swope asked to take the horse for trial, McComsey demurred, because, with some other reasons, he said he had heard that Swope and Bitzer had had some trouble about a horse, and he didn't want any trouble with this one. However, McComsey afterwards did agree that Swope should take him for trial, and, accordingly, Crawford and McComsey took the horse to Swope's place. The horse remained in Swope's possession, and it is admitted that Sweitzer did bring him three times to Crawford's stable, and it is admitted that, on the third occasion, the horse was taken out

of Swope's wagon and was placed in Crawford's stable, where he remained until the sheriff took him under his writ of replevin. It is also admitted by Crawford that he knew they were going to take the horse, but he says he himself had nothing to do with it, as McComsey took the horse himself. It is alleged that, after Swope got the horse, he retained him more than two days, and yet did not pay the purchase price. They say that McComsey was sick and could not go himself, but sent several times, if I recollect correctly the testimony, and was each time refused. About July 3, 1896, however, McComsey and Crawford went together to Swope's place, at Greenfield station. Crawford says that McComsey said he came after the money or the horse; Swope wanted to keep him, and then spoke about the oats for the first time. Crawford says he had nothing to do with the deal until this time. It was then agreed that Swope would furnish 300 bushels of oats to McComsey, and McComsey would sell the oats to Crawford, who would pay McComsey for the same at twenty-eight cents a bushel. Swope got out his pencil and figured, and then said that he would owe McComsey $21.00. The oats were there in the car at the time. It was to be delivered at once, in three loads, and, on the faith of this agreement, Crawford paid McComsey $50.00. Subsequently, on July 7, August 7 and August 18, Swope delivered 177 bushels of oats to McComsey, and not to Crawford.

\* \* \* \* \* \* \* \*

If you believe the testimony of the plaintiff, that this horse was sold by Crawford or McComsey, or either of them, for 300 bushels of oats and $20.00—$10.00 by check, $5.00 in cash, and a $5.00 debt—and, in pursuance of that contract, Crawford and McComsey delivered the horse to Swope, and Swope gave the $10.00 check, which was paid, and the $5.00 in money, and delivered the 177 bushels of oats, and there was no agreement that the horse was to remain the property of McComsey and Crawford, or either of them, until paid, but they trusted Swope to carry out the agreement, then the title would have passed to Swope, and neither McComsey nor Crawford, nor any other person, without Swope's permission, could take the horse out of Swope's wagon and retain him as against Swope, and, in such case, an action of replevin could be maintained by him. If

you so find, your verdict must be for the plaintiff. [But, if the story of the defendant is correct, then he (Swope) cannot recover. I have already stated to you that Swope must recover on the strength of his own title, or not at all.] [2] [If McComsey was the owner of the horse, and the agreement was that Swope was to take the horse and keep him for two days on trial, and, if he kept him, he would then come and pay the purchase money, before he should obtain the title, and, if he retained the horse without payment, then he was to pay $1.00 per day as long as he retained him after that time, and Swope neither paid the price nor returned the horse, then McComsey had the right, under the original agreement, to peaceably take the horse wherever he should find him.] [7] [If, then, subsequently, Mc-Comsey and Crawford went to Swope's place, and a new arrangement was made between these parties, and Swope was to furnish the oats and so much money, but it was stipulated that the oats and money were to be paid before the title passed, then Mc-Comsey, in case Swope failed to perform his contract, could retake the horse and put him in Crawford's stable. Such an agreement is, at least, a conditional sale in law. If a sale is made by one person to another on an express agreement that the vendee should pay the purchase price before he obtains the title, and the vendee keeps the horse and refuses to pay the money, he cannot hold the title thus acquired.] [6] While, as to the creditors of the vendee, such a sale may be void, it is good between the original parties and can be enforced.

Plaintiff's points were among others as follows :

2. The verdict in this suit should be in favor of the plaintiff, under the evidence and pleadings, no plea having been filed by Crawford, the defendant, that McComsey, or any one else, outside of the plaintiff, owned the horse, he having testified that he himself did not own him. *Answer :* This point is refused. The plaintiff must show title in himself before he can recover, and, from the evidence, the jury must ascertain whether he had any title or right of possession at the inception of this writ—that is, the beginning of the suit. [4]

3. The defendant, Crawford, having retained the horse and pleaded property, cannot defend by setting up a claim in a third party, like the decedent McComsey, not having filed any claim or plea upon record that the horse in suit belonged to any one

than himself. *Answer:* This point is also refused. It embraces the same principle that is set forth in the second point, and we have already answered the second point. [5]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*B. F. Davis,* with him *A. C. Reinoehl,* for appellant.—Speaking of the plea of property, if it be in the defendant, he clearly has a right to return; if it be in a stranger, the defendant is entitled to hold the goods against all persons, but the stranger himself, and so has a right to a return: Baird v. Porter, 67 Pa. 105; Rogers v. Arnold, 12 Wendell, 30.

The defendant's plea was non cepit and property and his defense was that the horse in dispute was the property of a third person, namely Jesse McComsey. He did not prove property in himself. He admitted that he had no property in the horse. This very question has been decided by the president judge in the opinion delivered in the Lancaster county courts, in Fleming v. Heitshu, 16 Lanc. Law Rev. 365, Buckley v. Handy, 2 Miles, 449, Mathias v. Sellers, 86 Pa. 486, Hartt v. McNeil, 47 Miss. 526, and North v. Firth, 2 Delaware County Rep. 467.

The defendant in replevin may plead property in himself or in a stranger either at bar or in abatement; and either plea, if established, will destroy the plaintiff's right of action: Wilson v. Gray, 8 Watts, 25; Lecky v. McDermot, 5 S. & R. 331; Morris on Replevin (3d ed.), 147. A plea of property in a stranger must be accompanied by a traverse of the right of the plaintiff: Rogers v. Arnold, 12 Wendell, 30; Van Namee v. Bradley, 69 Ill. 299; Chambers v. Hunt, 18 N. J. L. 339.

The plaintiff had the rightful possession of the horse in dispute, previous to the wrongful taking of it by the defendant. Under the law he was entitled to the verdict: Lynch v. Welsh, 3 Pa. 294; Buckley v. Handy, 2 Miles, 449; Rogers v. Arnold, 12 Wendell, 30; Gerber v. Monie, 56 Barbour, 652; Van Namee v. Bradley, 69 Ill. 299; Laughlin v. Thompson, 76 Cal. 287; Avondale Marble Co. v. Wiggins, 12 Pa. Superior Ct. 577; Sloane v. Shiffer, 156 Pa. 59.

*W. U. Hensel,* with him *H. M. Houser,* for appellee.—The

474, (1901).]    Arguments—Opinion of the Court.

defendant's retention of the horse and giving of a bond worked a conversion of the property and the plaintiff's relief was, thereafter, in damages: Fisher v. Whoollery, 25 Pa. 197; Rockey v. Burkhalter, 68 Pa. 221; Shoemaker v. Shoemaker, 7 Kulp, 528; Fleming v. Heitshu, 16 Lanc. Law Rev. 365; Cassidy v. Elias, 90 Pa. 434.

Where the defendant pleads property, the plaintiff is put to the proof of his title and must show an absolute or special property together with the right to the possession: Marsh v. Pier, 4 Rawle, 273; Watermen v. Robinson, 5 Mass. 303; Seibert v. McHenry, 6 Watts, 301; Mackinley v. McGregor, 3 Wharton, 360; Lester v. McDowell, 18 Pa. 91; Reinheimer v. Hemingway, 35 Pa. 432; Lake Shore & Michigan Southern Ry. Co. v. Ellsey, 85 Pa. 283; Mathias v. Sellers, 86 Pa. 486; Strauss v. Reen, 41 Legal Int. 54; Armory v. Delamirie, 1 Sm. Leading Cases, * 374.

OPINION BY W. D. PORTER, J., March 19, 1901:

This is an action of replevin for a horse, brought by the plaintiff against Jesse McComsey and Charles Crawford. The defendants gave a joint claim property bond and retained the horse. The plaintiff filed a declaration, alleging a wrongful taking and retention of the horse by the defendants jointly. The defendants, on September. 11, 1897, jointly pleaded non cepit and property. McComsey died before the case was tried, and, on June 7, 1899, his death was suggested of record. The jury was sworn to try the issue between Swope and Crawford, the surviving defendant.

Where, in an action of replevin, the property is retained and bond given by the defendant, the plaintiff's right to the property is turned into a chose in action; his property in the thing itself is absolutely gone. If the plaintiff subsequently recovers, the defendant is answerable in damages for the taking and detention up to the time of the delivery, and, in addition, for the full value of the property. The property itself can in no event be recovered at law from the defendant; nor can he tender it afterwards, in discharge of the action, or even in satisfaction pro tanto of the damages claimed. Even the right of recaption in the plaintiff is determined by the election of the remedy by action. "Where the property is retained by the defendant,

the plaintiff in replevin must declare that the defendant yet hath and detaineth the goods, and he shall have judgment to recover all in damages as well the value of the goods as damages for the taking of them: Fisher v. Whoollery, 25 Pa. 197; Rockey v. Burkhalter, 68 Pa. 221. It was argued by the learned counsel for the appellant that this principle was departed from in Baird v. Porter, 67 Pa. 105; but an examination of that case shows the contention not to be well founded. Baird had caused the property of Porter to be taken in distress for rent; Porter issued a replevin and Baird gave a property bond and retained the property. Porter then filed a declaration alleging a wrongful detention of the property, and Baird then filed an avowry for rent in arrear. The avowry was demurred to, and it was held that if the landlord had the right to take the property as a distress for the rent due him, and to detain it for the period allowed for a replevin " after such distress taken and notice thereof," before proceeding to appraise and sell it in satisfaction of the rent, that he had no right to retain it by giving a claim property bond, unless he had a general or special property in the goods which entitled him to the possession. It was his duty, under the law regulating the right of distress, to deliver up the goods as required by the writ, and, as his security for the rent, to look to the bond which the sheriff was required to take before making a deliverance of the distress. The defendant, by giving the claim property bond and retaining the goods, put it out of his power to set up as a defense to the replevin their distraint for rent in arrear. The demurrer was sustained, but the recovery had was damages for the value of the cattle. The first assignment of error is not well founded.

The second, third, fourth and fifth specifications of error have their foundation in the contention of the appellant that, under the issue as framed, it was not competent for Crawford, as a defense to the action, to show that the title to the property was in McComsey. When a defendant in replevin pleads property, the title of the plaintiff is put in issue, and the action cannot be maintained without showing either a general or special property in the plaintiff, together with the right of immediate possession. If, upon the whole evidence, the plaintiff fails to establish these essential facts, to the satisfaction of the jury, he is not entitled to recover: Lake Shore & Michigan

Southern Railway Company v. Ellsey, 85 Pa. 283; Mathias v. Sellers, 86 Pa. 486; Strong et al. v. Dinniny, 175 Pa. 586. This defendant did not attempt to defend under the title of a stranger, with which his possession was not connected. The plaintiff made McComsey a party to the record, and had declared against him jointly with Crawford. The plea of the defendants was joint. Under the issue thus framed it was competent for the defendants to show title, or the right of possession in both, or either of them. The death of McComsey did not change the issue, which was to be determined by the pleadings of record. The issue was tried between the plaintiff and Crawford, but it was the issue which appeared upon the record. It was certainly competent for Crawford to show that the title and right of possession was in his codefendant. When the plaintiff went to a trial upon the merits under the joint plea of McComsey and Crawford, it was a tacit agreement to waive all matters of form, and left Crawford free to offer any evidence which would have been competent if he had specially pleaded title in McComsey: Lewisburg Centre, etc., Railroad Company v. Stees, 77 Pa. 332; Mathias v. Sellers, supra.

If the jury found the facts to be as stated by the court in those portions of the charge which are assigned for error in the sixth and seventh specifications, then the sale by McComsey to Swope was conditional; and, if Swope failed to perform the conditions, McComsey had the right of recaption. The facts were impartially submitted to the jury, and the specifications of error are without merit.

The title to the property having been vested in the defendants upon giving the claim property bond, they were at liberty to do what they pleased with it afterwards, and the eighth specification of error is dismissed. The title of the plaintiff, if any he had, was derived through the alleged purchase from McComsey; he offered no evidence of any right adverse to that title. For this reason it was not material to inquire as to the manner in which McComsey had originally acquired title, and the ninth assignment of error is not well founded. There is no evidence of any abuse of discretion by the learned judge of the court below in refusing a new trial, and the tenth specification of error is dismissed.

The judgment is affirmed.