# Miller *v.* Jackson, Appellant.

*Assignment for creditors—Reservation in deed—Debtor's exemption—Appraisement.*

Where a deed of voluntary assignment for the benefit of creditors excepts and reserves personal property to the value of $300 for the use of the grantor, and immediately thereafter $300 worth of personal property is appraised and set apart, the title to such property remains in the grantor, and it is immaterial whether the property set apart was or was not specifically mentioned and described in the deed of assignment.

*Replevin—Practice, C. P.—Affidavit of defense—Act of April* 19, 1901, *P. L.* 88.

The affidavit of defense required by the replevin Act of April 19, 1901, P. L. 88, to be filed by defendant setting up title, must state frankly and fairly facts that support the claim advanced, and not legal conclusions or mere inferences drawn by the affiant. If the claim made be one of absolute ownership while the supporting facts averred show, at most,

but a special or qualified ownership, or right of possession—such as would arise from a pledge, or for other form of bailment for instance—without disclosing the additional facts necessary to determine the nature, extent and duration of such special right, such an affidavit will be insufficient.

An affidavit of defense in an action of replevin is insufficient, which avers that the title to the property was in the defendant, and not the plaintiff, but the other averments of the affidavit and the papers annexed thereto, show that the defendant had merely a chattel mortgage of the property, and that the property had never been delivered to him by the mortgagor.

*Bankruptcy—Federal act—Pennsylvania act—Farmers.*

The Pennsylvania insolvency Act of June 4, 1901, P. L. 404, is not suspended by the federal bankrupt act as to farmers.

A statement of claim which describes a person as one who "owned and resided on a farm," contains a sufficient foundation for the assumption that such a person is a "farmer" within the meaning of the federal bankrupt act of July 1, 1898, 30 Statutes at Large, 544.

Argued Nov. 14, 1906. Appeal, No. 94, Oct. T., 1906, by defendant, from order of C. P. Lancaster Co., Dec. T., 1905, No. 37, making absolute rule for judgment for want of a sufficient affidavit of defense in case of John B. Miller, Assignee for Benefit of Creditors, v. Joseph Jackson. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed in part.

Replevin for chattels.

The plaintiff filed the following statement of claim :

John B. Miller, assignee of William P. Chubbs and wife, of Little Britain township, Lancaster Co., Pa., says that on November 22, 1905, William P. Chubbs, who owned and resided on a farm at Oak Hill, Little Britain township, this county, with his wife executed a deed of assignment of all his property, real and personal, for the benefit of the creditors of said William P. Chubbs, to him, the said John B. Miller.

That said deed was properly executed and delivered, and was on November 24, 1905, at 11:30 A. M., entered of record in the recorder's office of Lancaster county in assignor's book 6, p. 84.

That among the personal property transferred to him under this deed of assignment was a gasolene engine, belt and tank,

one bay horse, a surrey and top buggy, and all of the above-named articles were on the farm of assignors in Little Britain township, and were in the custody and under the control of this affiant.

That on November 27, 1905, Joseph Jackson, the defendant, without any warrant or authority of law, and with due notice that the above property had been committed into the care, custody and control of this affiant, came upon the premises in Little Britain township, and took and carried away all of above-named articles, and removed them to his farm in Little Britain township, where he still retains them.

That at the time of the unlawful seizure and removal of the goods as aforesaid, to wit: one gasoline engine, belt and tank, one bay horse, a surrey and top buggy, the defendant had no claim of title or ownership in or to the said goods, and the removal of the same was without warrant or authority of law.

The defendant filed the following affidavit of defense:

The articles enumerated and set forth in plaintiff's statement, to wit: A gasoline engine, belt and tank, one bay horse, a surrey and top buggy, are not the property of the plaintiff, but are owned by and belong to the deponent, and did belong to deponent as owner thereof at and before the time the writ of replevin in this suit was issued. Defendant obtained said goods from William P. Chubbs, the former owner thereof, who delivered said goods and chattels to deponent before said writ of replevin was issued. The plaintiff has no title to said goods as assignee, unless as assignee for benefit of creditors, and deponent under advice of his counsel denies plaintiff's right to claim them under any of the acts of assembly relating to assignments for benefit of creditors, as said acts are not in force, but are suspended by reason of the national bankrupt act enacted by congress of the United States on July 1, 1898. The bay horse referred to in plaintiff's writ and statement does not belong to plaintiff, but the same was retained by said William P. Chubbs under his claim of exemption, which was filed by said plaintiff in the prothonotary's office of said court on December 4, 1905. See trust book 20, page 77. The said William P. Chubbs by agreement in writing, a copy of which is hereto appended and made part hereof, agreed that said goods were the property of defendant upon the payment of a

note of $400, which defendant paid. The note referred to, of $400, was dated September 27, 1905, due in sixty days from date. A hay press, included in said agreement, said Chubbs sold for $150, and turned the money or note over to deponent, who credited the said $150 note on said $400 note.

All of which he expects to be able to prove upon the trial of the said action, and further saith not.

### COPY.

" Know all men by these presents, that I, William P. Chubbs, of Little Britain township, Lancaster county, Pa., do by these presents assign, transfer and set over to Joseph Jackson, of Little Britain township, Lancaster county, Pa., the following property: Ten cows, gasolene engine, hay press, tank, belt, scales, etc., one bay horse, new top buggy, surrey; said cows are on the property now; said party, namely, William P. Chubbs, is not to sell or dispose of said property until the sum of four hundred dollars is paid in full, or without the consent of said Joseph Jackson; if said sum is not paid in sixty days then in that case said Joseph Jackson shall have the right to take possession of said property to sell or dispose of it, to apply the proceeds from such sale to payment of said sum; said Wm. P. Chubbs further agrees, with consent of said Joseph Jackson, to have a public sale of said property; in that case he is to receive proceeds of said sale, either in cash or bankable notes, to liquidate or pay said sum or four hundred dollars at time of said sale.

" Witness my hand and seal, the 26th day of September, A. D. 1905.

" Witness:                          W. P. CHUBBS,   [Seal.]

" W. C. WHITESIDE."

The court in an opinion by LANDIS, P. J., made absolute rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*B. F. Davis*, for appellant.—The plaintiff in replevin must recover upon the strength of his own title, and not upon the weakness of the title of his adversary: Reinheimer v. Hemingway, 35 Pa. 432; Swope v. Crawford, 16 Pa. Superior Ct. 474.

In the instrument under seal, signed by Chubbs, the title to the articles included in the writ of replevin was transferred by William P. Chubbs, subsequently the assignor, to Joseph Jackson, now the appellant, which instrument is binding on Chubbs and is valid as between the parties: Swope v. Crawford, 16 Pa. Superior Ct. 474; Raymond v. Schoonover, 181 Pa. 352; Kent, Santee & Co.'s App., 87 Pa. 165; Wright v. Wigton, 84 Pa. 163; Crawford County v. Bank, 164 Pa. 109.

The plaintiff has no standing in this case as voluntary assignee for the benefit of creditors, because the assignment or insolvency acts of Pennsylvania are superseded by reason of the general bankruptcy law of July 1, 1898: Nehf & Son's Est., 14 Pa. Dist. Rep. 343; Dolhenty's Est., 11 Pa. Dist. Rep. 187; Potts v. Smith Mfg. Co., 25 Pa. Superior Ct. 206; Parmenter Mfg. Co. v. Hamilton, 172 Mass. 178 (51 N. E. Repr. 529); Harbaugh v. Costello, 184 Ill. 110 (56 N. E. Repr. 363); Rowe v. Page, 54 N. H. 190; Wescott Co. v. Berry, 4 Am. Bank Rep. 264; Bruss-Ritter Co., 1 Am. Bank Rep. 58; In re Etheridge Furniture Co., 1 Am. Bank Rep. 112.

*Edwin M. Gilbert*, for appellee.—The paper in controversy cannot and did not pass title even as between Chubbs and Jackson, and was not intended to. It comes nearer being a bill of sale than anything else, but lacks the elements of that: Hill v. Leibig Mfg. Co., 3 Pa. Superior Ct. 398; Hastings v. Sprouls, 10 Pa. Superior Ct. 82; Lehr v. Brodbeck, 192 Pa. 535; Barlow v. Fox, 203 Pa. 114.

The national act, July 1, 1898, has clearly, fully and unqualifiedly excluded a farmer from its operation: Potts v. Smith Mfg. Co., 25 Pa. Superior Ct. 206; Climax Road Machine Co. v. Shusley, 30 Pa. C. C. Rep. 201; Citizens' Nat. Bank of Waynesburg v. Gass, 29 Pa. Superior Ct. 125.

OPINION BY HEAD, J., October 7, 1907:

On November 22, 1905, W. P. Chubbs executed and delivered unto John B. Miller, the plaintiff, in trust for the benefit of the creditors of the former, a deed of voluntary assignment covering all of his property, real and personal, except personal property to the value of $300 which was reserved in the deed for the use of the grantor.

We cannot determine from the record now before us whether

or not the property, the title to which was thus retained by the assignor, was specially named or designated in the deed itself. Appraisers were promptly appointed, however, and on December 2, 1905, they appraised and set apart unto the grantor the property which was then certainly identified as that which he had reserved in his deed of assignment, although the language of that instrument may have been general. The list contained but two items, viz. : " One bay horse, $50.00 ; balance due from Ella Chubbs, $250."

The claim to this property, first made in the deed itself, perfected by the prompt application for appraisers and their official designation of what was covered by the claim, resulted in leaving the title of the assignor to that property undivested, as if the deed had never been made, or as if these particular items had been specially reserved from the operation of the deed. In Peterman's Appeal, 76 Pa. 116, Mr. Justice WILLIAMS thus describes the effect of the appraisement pursuant to a general reservation in a deed of assignment : " Is the appellant then entitled to the portion of the fund he claims ? It is clear that he is, unless his right to it was divested by the deed of assignment. Whether it was or not, depends upon the construction to be given to the exception in the deed. He had the undoubted right to reserve, for the use of himself and family, property to the value of $300. His right to except it out of the assignment is founded on the exemption act of April 9, 1849, but his right to it as against the assignee depends upon the exception of the deed. It is true that the deed does not specify or define the property intended to be excepted, but leaves it to be selected by the assignor. But his right of selection is not confined to any particular description of property, nor is it subject to any condition whatever ; and his right to the property, when selected, is as perfect as if it had been specially excepted out of the assignment." The same principle is declared in McFarland's Estate, 16 Pa. Superior Ct. 152. Whether, therefore, the bay horse was specially reserved in the deed, as the statement—not questioned—in the history of the case declares, or the reservation, general in the deed, was made specific by the subsequent claim and appraisement, in either event the assignee took no title to the horse as against the assignor or the defendant claiming under and through the

assignor.  As to the horse, the averment of the affidavit of defense was sufficient to prevent a judgment, and, as to it, the learned court below fell into error in making absolute the rule for judgment for want of a sufficient affidavit of defense.  The second assignment of error must be sustained.

At the time of the execution of the deed of assignment Chubbs, the assignor, was the owner of a farm and resided on it.  He had thereon a lot of personal property, including not only the horse already referred to but the other articles named in the writ of replevin.  After the deed had been delivered and recorded, to wit: on November 27, 1905, Jackson, the defendant, went to the farm, and, without the knowledge or consent of the assignee, removed therefrom the property embraced in the writ.

The Act of April 19, 1901, P. L. 88, provides that a defendant who desires to contest, in court, the title to or right of possession of property replevied, must file an affidavit of defense " setting up the facts denying the plaintiff's title and showing his own title to said goods and chattels," and authorizes the court to enter judgment in favor of the plaintiff " for such goods and chattels as to which the court may adjudge the affidavit insufficient."  The sufficiency of such an affidavit must be determined by the same rules that control in other actions where like affidavits are required.  It must state frankly and fairly facts that support the claim advanced; not legal conclusions or mere inferences drawn by affiant.  If the claim made be one of absolute ownership whilst the supporting facts averred show, at most, but a special or qualified ownership or right of possession—such as would arise from a pledge or other form of bailment for instance—without disclosing the additional facts necessary to determine the nature, extent and duration of such special right, such an affidavit would be plainly insufficient.

Turning then to the affidavit we find first, a general averment that the chattels replevied " are not the property of the plaintiff, but are owned by and belong to deponent as owner thereof."  This is but a conclusion, not more specific than the short plea of " property," and, of course, valueless.  Then follows an averment that the goods were delivered to deponent by Chubbs before the writ issued ; but as such, may, if delivered

was made after the execution, delivery and recording of the deed of assignment, of all which Jackson had notice, it could in no way divest the title of the assignee. The only other specific averment in the affidavit, relating to the property replevied except the horse, is the following: " That said William P. Chubbs by agreement in writing, a copy of which is hereto appended and made part hereof, agreed that said goods were the property of defendant upon the payment of a note of $400, which defendant paid. The note referred to of $400 was dated September 27, 1905, due in sixty days from date. A hay press, included in said agreement, said Chubbs sold for $150 and turned the money or note over to deponent, who credited the said $150 on said $400 note."

A careful examination of the written agreement referred to discloses no support for the averment of absolute ownership in defendant. It does not evidence an intention on the part of Chubbs to divest himself of the title to, and ownership of, the personal property therein mentioned. On the contrary, it clearly indicates that the beneficial ownership was to remain in him. No transfer of possession accompanied or followed the agreement or was intended to, but the possession remained as before, with the right of the owner to fully use and enjoy the property without rent, service or condition except the promise that he would not " sell or dispose of it until the sum of $400 is paid in full or without the consent of said Joseph Jackson."

We think the plain purpose of the paper was to create a chattel mortgage, a pledge of the property specified as security for the performance of the primary obligation referred to in the paper, viz. : the payment of a sum of money. But as the pledge was not completed by the delivery of the property the contract, as to this, remained executory and conditional, and the defendant could not execute it himself. The affidavit does not aver that Jackson had taken the property mentioned in the writ for the purpose of selling it and applying the proceeds to the payment of the balance of his debt, returning the surplus, if any, to Chubbs or his assignee. Indeed, he does not aver that at the time of the seizure any of the debt of $400 remained unpaid. The agreement covered a considerable amount of property not embraced in the writ of replevin, to wit: " Ten cows, a hay press, scales, etc." The affidavit admits that Chubbs,

after the agreement, had sold the hay press, and reduced the debt $150. It does not aver this was the only sum paid. It gives no information as to what had become of the " ten cows, scales," etc., which were not on the farm when the deed was made, and is silent, as already observed, as to the amount of the debt, if any, still actually existing at the time of the seizure. The averment of the defendant that he was the absolute and unconditional owner of the property replevied was not, therefore, supported by the agreement. No other warrant for such a claim is shown. If there were any facts from which a court could determine that some qualified right of possession still existed to secure the payment of a certain sum of money, no such facts are averred. We think the learned court below was right in making absolute the rule for judgment as to all of the property embraced in the writ except the bay horse.

It is argued by the learned counsel for the appellant that the deed of assignment under which the plaintiff claims was a nullity, because the operation of our insolvent act of 1901 has been held to be suspended whilst the national bankrupt act of July 1, 1898, remains in force : Potts v. Smith Mfg. Co., 25 Pa. Superior Ct. 206 ; Bank v. Gass, 29 Pa. Superior Ct. 125. But the act of congress excepts from its operations certain classes of persons, viz. : wage earners and farmers, " and as to such persons the Act of June 4, 1901, P. L. 404, is in force : " Bank v. Gass, supra. In the present case it is averred in the plaintiff's statement that " W. P. Chubbs owned and resided on a farm." In the absence of any denial this ought to be a sufficient foundation for the assumption that he was a " farmer," and hence our statute would be operative. But it has not been made clear to us, nor was it to the court below, why the deed of assignment depended for its vitality on the act of 1901, or why it is not just as effective now as it would have been before the passage of that act.

As to all property mentioned in the writ except the bay horse the judgment is affirmed ; as to the horse, the judgment is reversed and a procedendo is awarded. The costs of this appeal to be paid by appellee.

DISSENTING OPINION BY MORRISON, J.:
I agree with the majority opinion reversing the judgment as

to the bay horse, but I would go further and reverse the judgment generally.

The plaintiff having declared for the property as assignee of William P. Chubbs and wife, for the benefit of creditors, defendant filed an affidavit of defense setting up ownership and right of possession, and actual possession of the property replevied, before the writ issued. But on motion and argument the court held the affidavit of defense insufficient, and directed judgment against the defendant, and our question is, ought this judgment to be sustained?

The defendant's claim to the property was under the writing executed and delivered by W. P. Chubbs to him, as follows:

" Know all men by these presents, that I, William P. Chubbs, of Little Britain township, Lancaster county, Penna., do, by these presents, assign, transfer and set over to Joseph Jackson, of Little Britain township, Lancaster county, Penna., the following property : Ten cows, gasolene engine, hay press, tank, belt, scales, etc.; one bay horse, new top buggy, surry; said cows are on the property now ; said party, namely, Wm. P. Chubbs, is not to sell or dispose of said property until the sum of $400 is paid in full, or without the consent of said Joseph Jackson ; if said sum is not paid in sixty days, then in that case said Joseph Jackson shall have the right to take possession of said property to sell or dispose of it, to apply the proceeds from such sale to payment of said sum ; said Wm. P. Chubbs further agrees with consent of said Joseph Jackson, to have a public sale of said property ; in that case he is to receive proceeds of said sale, either in cash or bankable notes to liquidate or pay said sum of $400 at time of said sale. Witness my hand and seal, the 26th day of Sept., A. D. 1905. W. P. Chubbs, Seal."

Jackson avers in his affidavit of defense that he paid the $400 referred to in the above writing, and that on November 27, 1905, Chubbs delivered to him the property in question and he took and retained possession thereof. It further appears that on November 22, 1905, Chubbs and wife made a deed of voluntary assignment to John B. Miller, the plaintiff, for the benefit of creditors. This assignment gives rise to the questions in dispute in this case.

The learned court, in the opinion holding that the affidavit

of defense was insufficient, said: "It is not denied that at the date of the assignment the property which is here in dispute was in possession of the assignor. The moment the deed of assignment was executed and delivered, whatever property then stood in his name passed to his assignee for the benefit of creditors. If, at that time, the defendant had no right to the possession of the property, he could not thereafter summarily go upon the lands of the assigned estate and take it away without process of law, nor could the assignee then give him a right so to do. Under the agreement which he has presented, and which is recited above, if the $400 therein mentioned was not paid in sixty days Joseph Jackson had the right to take possession of said property, to sell or dispose of it; but that time did not expire till November 26, 1905, whereas the deed of assignment was executed and delivered on November 24, 1905. I am of the opinion that, from the agreement and giving it its proper construction, Jackson had no authority to take the property from the Chubbs farm, and it follows, as a consequence, that he had no right to retain it under his counter bond."

The question then is, can this doctrine of the court be sustained? It is true that Jackson did not have a right to the possession of the property in question till November 26, 1905, and he did not get possession of it until November 27, 1905, and this was several days after the execution and delivery of the assignment of Chubbs and wife to the plaintiff, but, in my opinion, it does not follow that Jackson obtained the property unlawfully, and that he could not hold it as against the plaintiff, the voluntary assignee of Chubbs and wife. Under the facts stated in his affidavit of defense, which must now be assumed to be true, Jackson had a lawful right to go to Chubbs and take possession of the property in question, unless Chubbs would at once repay him the $400 which he had paid for the benefit of Chubbs, as recited in the writing above quoted. It is not pretended that Jackson had been repaid more than $150 of this sum.

The writing of September 26, 1905, from Chubbs to Jackson, as between them, was valid and enforceable, although it was conditional, and might not have been good as against bona fide purchasers without notice or execution creditors of Chubbs.

It has been decided many times by our Supreme Court that an assignee for the benefit of creditors stands in the shoes of the assignor. He is not a purchaser for value, and it seems he is in no better position to avoid the contract in question than Chubbs was if he had not made the assignment. Suppose Chubbs had not assigned to Miller, and Jackson had gone to Chubbs and obtained possession of the property described in the writing and the writ, and retained possession of it, can it be possible that Chubbs could, without paying to Jackson the $400, lawfully recover the property? Certainly not. If we are correct in this position, how can Chubbs's assignee, standing in his shoes, maintain this replevin? Under all of the decisions it seems that the assignee stands in place of the assignor.

A plaintiff in replevin must recover, if at all, on the strength of his own title, not on the weakness of his adversaries: Reinheimer v. Hemingway, 35 Pa. 432; Swope v. Crawford, 16 Pa. Superior Ct. 474.

Under all of the authorities Miller, assignee, is a mere volunteer. It was not in the power of Chubbs to divest Jackson's rights in the property replevied by assigning to Miller. " An assignee for creditors is not a purchaser. He is a mere volunteer. The assignee claims through the assignor. His rights rise no higher. The creditors claim through the assignee. They have his title, nothing more : " PAXSON, J., in Kent, Santee & Co.'s App., 87 Pa. 165. See also Wright & Slingluff v. Wigton et al., 84 Pa. 163, and cases therein cited : Crawford County et al. v. Bank, Haskins's App., 164 Pa. 109, and Smith v. Equitable Trust Co., Appellant, 215 Pa. 418. The latter case seems to me to put this question beyond controversy.

Clearly, under the facts conceded and those averred in the affidavit of defense, Jackson had the right on November 27, 1905, under the executory contract between him and Chubbs, to the possession of the property in dispute. If no assignment had been made, and Chubbs had refused to deliver the property to Jackson, he could have maintained replevin for it, and if the assignment only placed Miller in the shoes of Chubbs, I cannot see why Jackson was not lawfully entitled to take possession of the property when he did. I am, there-

fore, of the opinion that the affidavit of defense was sufficient, and that the court erred in directing judgment for the plaintiff. The writing of September 26, 1905, was a pledge of the property from Chubbs to Jackson, and it induced the latter to pay the $400 debt owned by Chubbs, and, in my opinion, this pledge was not weakened or revoked by the voluntary assignment made to Miller.

.I would reverse the judgment with a procedendo.